**MILLER WASTE MILLS, INCORPORATED, d/b/a RTP Company, Appellant,**

v.

**Carol Ann MACKAY, individually and as the purported co-representative of the Estate of Rudolph W. Miller; et al., Defendants and Plaintiffs on counterclaim and on Third–Party Complaint, Respondents,**

v.

**Hugh L. MILLER, et al., defendants on third-party complaint, Appellants,**

and

**Helen Lou KURTZ and Carol Ann Mackay, individually and as representatives of the Estate of Rudolph W. Miller, Petitioners and Plaintiffs, Respondents,**

v.

**Benjamin A. MILLER, et al., Respondents and Defendants, Appellants.**

No. C4–94–75.

Court of Appeals of Minnesota.

Aug. 16, 1994.

Review Denied Oct. 14, 1994.

Richard T. Ostlund, Randy G. Gullickson, Lindquist & Vennum, Minneapolis, for appellants.

Joseph W. Anthony, Vincent D. Louwagie, Fruth & Anthony, P.A., Minneapolis, for respondents.

Considered and decided by KALITOWSKI, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellants Miller Waste Mills, Benjamin Miller, Hugh Miller and Charles Wunderlich challenge the district court's order, which (1) grants respondents Helen Lou Kurtz and Carol Ann Mackay a writ of mandamus directing Miller Waste Mills to hold a shareholders' meeting, (2) permits Kurtz and Mackay to vote shares from the Rudolph and Oscar Miller estates, and (3) enjoins Miller Waste Mills and its corporate board from repurchasing shares pursuant to its stock redemption provision. By notice of review, Kurtz and Mackay argue the district court erred by concluding Miller Waste Mills' stock redemption provision is enforceable. We affirm the district court's enforcement of the stock redemption provision and reverse its decision that Kurtz and Mackay may vote the Miller Waste Mills' shares of the Oscar and Rudolph Miller estates.

## FACTS

This case involves a family-owned corporation and a dispute among family members. Miller Waste Mills (Miller Waste), a closely-held Minnesota corporation, was founded by Jennie and Joseph Miller in the 1920s. The Millers had three sons: Benjamin, Oscar, and Rudolph. From the 1930s, Benjamin and Rudolph were directly involved in the corporation's day-to-day operations. Oscar lived in New York and was not involved in the corporation's business.

In 1940, Benjamin and Rudolph acquired a number of shares in Miller Waste, and entered into an agreement, which provided that the two would sell whatever shares of stock they acquired "at par or at their cost, whichever is lower," to the other party to ensure that they would retain an equal number of shares.[1]

In April 1951, the shareholders approved a stock redemption provision (Article XVI), which, *inter alia*, prevented shareholders from transferring Miller Waste stock without Miller Waste's consent.[2] When Jennie Miller died in 1964, the corporation did not invoke Article XVI, and Jennie Miller's estate transferred stock to her children. Benjamin and Rudolph acquired the stock from all the other children, except Oscar, so that the allocation of stock was as follows:

| | | |
|---|---|---|
| Benjamin | 346 shares | 47.66% |
| Rudolph | 346 shares | 47.66% |
| Oscar | 34 shares | 4.68% |

In 1984, Rudolph Miller transferred 172 shares to his two daughters, Carol Ann Mackay and Helen Lou Kurtz. Rudolph did not seek prior approval as required under Article XVI. However, Benjamin Miller and Charles Wunderlich (Miller Waste's vice-president) signed the stock certificates and thus were aware of the transfers.

In 1987, Benjamin Miller transferred 172 shares to his sons, Hugh (86 shares), Jonathan (43 shares), and Joseph (43 shares). His sons, in turn, transferred their shares to a voting trust with Ralph Strangis as voting trustee. Since 1987, the allocation of shares has remained as follows:

| | | |
|---|---|---|
| Benjamin Miller | 174 shares | 23.97% |
| Estate of Rudolph Miller | 174 shares | 23.97% |
| Estate of Oscar Miller | 34 shares | 4.8% |
| Carol Ann Mackay | 86 shares | 11.85% |
| Helen Lou Kurtz | 86 shares | 11.85% |
| Trustee of Voting Trust | 172 shares | 23.69% |

Oscar Miller died on December 23, 1992. Miller Waste's board chose to exercise Article XVI, and on January 27, 1993 it notified Oscar Miller's estate of its intent to purchase the stock. Three days later, Rudolph Miller died. On February 26, Miller Waste notified both the Rudolph and Oscar Miller estates that the proposed closing of the stock purchase under Article XVI was set for March 31, 1993.

The closing did not take place. On March 17, Kurtz and Mackay, individually and on behalf of the Rudolph Miller estate, entered into a voting agreement with the Oscar Miller estate. Based on the voting agreement, Kurtz and Mackay claimed to control 380 shares of Miller Waste—including their 172 shares, Rudolph Miller's estate's 174 shares, and Oscar Miller's estate's 34 shares. The 380 shares represented 52% of Miller Waste's stock.

---

**1.** The agreement provided: [I]t is hereby agreed by and between both parties hereto, that each of the parties hereto will sell at par or at their cost, whichever lower, to the other party hereto, any number of shares of common capital stock in the Miller Waste Mills, Incorporated stock that either of the said parties hereto may obtain or become owner of, either by purchase or gift, so as to make either party hereto have an equal number of shares of the Miller Waste Mills, Incorporated stock; the purpose hereof being to equalize the holdings of each party hereto in the Corporation, so that each party hereto, including their family, may have and hold an equal number of shares of the common stock.

**2.** Article XVI provides in relevant part:

No shareholder of common stock shall sell, assign, transfer, pledge, mortgage, or in any manner encumber shares of this corporation, or make a gift thereof, nor shall same pass to his heirs, or legatees, unless the company shall consent in writing thereto, or unless the shareholder, or his legal representatives, shall first send, by registered mail, to the president of the company, a notice of intention to sell or dispose of the same, and the company shall first have the right and opportunity to purchase said shares at any time within one hundred and twenty (120) days from the date of the mailing of said notice, at a price equal to the book value of the sh: .es as of the end of the preceding fiscal year as determined from the books of the corporation.

On March 19, 1993, Mackay and Kurtz presented to Benjamin Miller and Miller Waste's board of directors, a notice of demand for a shareholders' meeting to be held on March 23, 1993 to: (a) remove the present board, including Benjamin and Hugh Miller, and Charles Wunderlich; (b) repeal Article XVI; (c) rescind Miller Waste's February 25 resolution to exercise its right to redeem the stock; (d) prohibit Miller Waste and its board from carrying out the February 25 resolution; and (e) changing the number of board members from four to five and electing new directors. The board did not call a meeting.

On March 22, appellants sued Kurtz and Mackay, seeking equitable relief and a declaratory judgment that Kurtz and Mackay were not entitled to a shareholders' meeting. Kurtz and Mackay, in turn sued appellants, seeking a writ of mandamus and equitable relief compelling a shareholders' meeting. The cases were consolidated, and the parties brought cross-motions for injunctive relief. The court ordered the status quo preserved and set the matter for trial.

Later, after motions, the district court (a) granted Kurtz and Mackay a writ of mandamus ordering a shareholders' meeting to vote on the March 22 demand; (b) permitted Mackay and Kurtz to vote the shares of the Rudolph and Oscar Miller estates; and (c) enjoined Miller Waste from invoking Article XVI until after the proposed shareholders' meeting. This appeal followed.

## ISSUES

1. Did the district court err by concluding the stock transfer provision is enforceable?

2. Did the district court err by concluding that Kurtz and Mackay may vote the shares of the Oscar and Rudolph Miller estates?

3. Did the district court err by granting a writ of mandamus ordering a shareholders' meeting?

4. Did the district court err by granting respondents injunctive relief?

5. Did the district court err by concluding that appellants did not breach their fiduciary duties?

6. Should respondents' motion to strike part of appellants' reply brief be granted?

## ANALYSIS

### I. *Enforceability of Article XVI*

■ Kurtz and Mackay contend that Article XVI is unenforceable. We disagree. A restriction on the transfer of securities of a corporation may be imposed in the "bylaws" by "written action by the shareholders." Minn.Stat. § 302A.429, subd. 1 (1992). A transfer restriction may be enforced as long as the restriction is not "manifestly unreasonable under the circumstances" and is "noted conspicuously" on the stock certificate. *Id.* Several types of restrictions are always deemed "not manifestly unreasonable," including

> any restriction which requires the holder to give the corporation, the other shareholders, or any combination of either or both, a right of first refusal or an option, to purchase the shares.

*Id.,* Reporter's Notes (1981).

■ In this case, the stock redemption provision provides, *inter alia,* that no shareholder's stock may "pass to his heirs" unless Miller Waste consents in writing or is given the opportunity to purchase the shares at book value. A corporation's right to repurchase shares upon a shareholder's death is a common transfer restriction that many courts have upheld. *See St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040, 1046 n. 9 (8th Cir.1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978).

In a closed corporation the logic of enforcing such redemption provisions is especially compelling. *See Renberg v. Zarrow,* 667 P.2d 465, 469 (Okla.1983) (redemption agreement assures succession in interest of persons most likely to act in harmony with the other stockholders); *see also F.H.T., Inc. v. Feuerhelm,* 211 Neb. 860, 320 N.W.2d 772, 776 (1982) (transfer restrictions are employed to insure that the management and

control of the business remains with same group of investors or with people well known to them); *Estate of Meller v. Adolf Meller Co.*, 554 A.2d 648, 653 (R.I.1989) (stock redemption agreement reflects intent that corporation not pay out insupportable sums of money upon death of a key shareholder); *Bruns v. Rennebohm Drug Stores, Inc.*, 151 Wis.2d 88, 442 N.W.2d 591, 595–96 (Ct.App. 1989) (closed corporation has a special need to control the number and character of shareholders), *rev. denied* 446 N.W.2d 285 (Wis.1989). Accordingly, the district court properly concluded that Article XVI was enforceable as a valid stock transfer restriction.

■ Kurtz and Mackay argue that the disparity in price between the book value and the fair value [3] creates a manifestly unreasonable transfer restriction. Price disparity, however, between current market value and record value alone is not sufficient to make a transfer restriction invalid. *See Estate of Meller*, 554 A.2d at 653 (absent fraud, mistake or concealment, stock redemption agreement is enforceable even if price is inadequate or excessive). Here, there is no evidence of fraud, overreaching, concealment or bad faith, and therefore we hold the district court did not err by concluding Article XVI is enforceable.

## II. *Right to Vote Shares*

■ The district court concluded that Kurtz and Mackay have the right to vote the shares held by the Rudolph and Oscar Miller estates. Appellants disagree, claiming that upon exercising the stock redemption provision, Miller Waste became the equitable owner of the Oscar and Rudolph Miller estates' stock. Mackay and Kurtz contend, however, that because legal title to the stock has not been transferred, the estates' representatives retain the right to vote the stock.

We hold that Kurtz's and MacKay's interest in the Rudolph and Oscar Miller estates does not accord them the right to vote the shares to repeal Article XVI. Article XVI creates a contractual obligation among Miller Waste's shareholders. *See Swanson v.*

*Shockley*, 364 N.W.2d 252, 255 (Iowa 1985) (contractual rights may arise from shareholder reliance on corporate bylaws); Minn.Stat. § 302A.429 (1992) (permitting stock transfer restrictions in a corporation's bylaws); *see also Merrill Lynch*, 562 F.2d at 1046 (requirement that shareholder offer his shares to corporation, whether he wants to retain them or not, creates an option contract).

■ When a corporation exercises a valid contractual repurchase option, like Article XVI, the corporation becomes the equitable owner of the stock, and the shares can not then be voted contrary to the equitable owner's interests. In this case, as equitable owner of the shares of the Rudolph and Oscar Miller estates, Miller Waste has the right to invoke Article XVI and enforce the stock redemption provision without interference from Kurtz and Mackay.

We note that, as a bylaw, Article XVI may be amended with the shareholders' consent. *See Swanson*, 364 N.W.2d at 255 (contractual rights may arise from shareholder reliance on corporate bylaws). In fact, there were discussions between the parties before the deaths of Rudolph and Oscar Miller regarding Article XVI to permit shares to be bought at fair market value. But once Miller Waste exercised Article XVI and notified the Rudolph and Oscar Miller estates of its intent to purchase the stock, an option contract was created, which could not be unilaterally rescinded by Kurtz and Mackay. Accordingly, the district court erred by concluding that Kurtz and Mackay could vote the shares of the Rudolph and Oscar Miller estates to retroactively repeal Article XVI and fortuitously benefit from their sudden deaths.

## III. *Writ of Mandamus*

■ Kurtz and Mackay argue that because Benjamin Miller had a duty to call a shareholders' meeting, the district court properly issued a writ of mandamus to require him to schedule one. Appellants do not contest Kurtz's and Mackay's right to a shareholders' meeting; they argue that the meeting

---

**3.** The record is not precise, but apparently Miller Waste's book value is about $17,600 per share and a share's fair value is about $32,600.

did not have to be called by March 31, 1993. We agree.

■ Mandamus is an extraordinary legal remedy, issued upon equitable principles in the exercise of sound judicial discretion. *Nationwide Corp. v. Northwestern Nat'l Life Ins. Co.*, 251 Minn. 255, 265, 87 N.W.2d 671, 679–80 (1958). A district court's order granting a writ of mandamus will only be reversed if there is no evidence reasonably tending to sustain its finding. *Northwest Publications, Inc. v. City of St. Paul*, 435 N.W.2d 64, 66 (Minn.App.1989), *pet. for rev. denied* (Minn. Mar. 29, 1989).

■ A court may issue a writ of mandamus to compel performance of an act that the law "specially enjoins as a duty resulting from an office, trust or station." Minn.Stat. § 586.01 (1992). "When the right to require the performance of the act is clear, and it is apparent no valid excuse for nonperformance is given, a peremptory writ may be allowed." Minn.Stat. § 586.04 (1992). A writ of mandamus may be issued to require a corporation's officers and directors to call a meeting of the shareholders. *See State ex rel. Lake Shore Tel. & Tel. Co. v. De Groat*, 109 Minn. 168, 176, 123 N.W. 417, 419 (1909).

Minnesota law requires that if either a regular or special meeting is requested, the corporate board, within thirty days of the demand, must schedule a meeting to be held no later than ninety days after the demand's receipt. Minn.Stat. §§ 302A.431, subd. 2 (1992) (regular meetings); 302A.433, subd. 2 (1992) (special meetings). In this case, on March 19, 1993, Kurtz and Mackay provided notice of demand for a shareholders' meeting to take place on March 23, 1993. By law, however, the board had ninety days to hold the requested board meeting, and thus could have scheduled the meeting to be held as late as mid-June—after the proposed Article XVI stock redemption closing on March 31, 1993. Under these circumstances, the district court abused its discretion by issuing a writ of mandamus requiring that a board meeting be held to permit Kurtz and Mackay to vote the shares of the Rudolph and Oscar Miller estates.

## IV. *Injunction*

The district court enjoined appellants from preventing Kurtz and Mackay from voting the shares of the Rudolph and Oscar Miller estates and from enforcing the board's February 25, 1993 resolution to redeem the estates' shares.

■ The granting of an injunction rests within the sound discretion of the district court and its decision will not be reversed except for an abuse of discretion. *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 91 (Minn.1979). Because we hold that the stock redemption agreement was enforceable and that Kurtz and Mackay may not vote the shares of the Rudolph and Oscar Miller estates, the district court's injunction is reversed.

## V. *Breach of Fiduciary Duties*

■ The district court concluded that appellants had not breached their fiduciary duties to Kurtz and Mackay as a matter of law. *See Fewell v. Tappan*, 223 Minn. 483, 494, 27 N.W.2d 648, 654 (1947) (shareholder in closely held corporation has fiduciary duty to deal fairly with other shareholders). Whether shareholders breached their fiduciary duty to other shareholders is generally a question of fact. *See Evans v. Blesi*, 345 N.W.2d 775, 779 (Minn.App.1984), *pet. for rev. denied* (Minn. June 12, 1984).

■ Kurtz and Mackay advance four grounds for a finding of a breach of fiduciary duty. First, they argue that appellants failed to call a special or regular shareholders' meeting upon demand. A shareholder has the right to request a board meeting, but is not entitled to mandate the specific time for the meeting so long as the meeting is held within the statutory guidelines. *See Savin Business Machs. Corp. v. Rapifax Corp.*, 375 A.2d 469, 472 (Del.Ch.1977). Under Minnesota law, the Miller Waste board had thirty days to schedule a regular or special meeting to be held within ninety days from the demand on March 17, 1993. Because Miller Waste's board was not required by law to hold a meeting by March 22, as Kurtz and Mackay requested, appellants did not breach their fiduciary duty.

Second, Kurtz and Mackay argue that appellants improperly failed to negotiate a modification of Article XVI. But Article XVI was a lawful redemption provision and therefore appellants were under no obligation to negotiate a modification of it.

Third, Kurtz and Mackay allege appellants breached their fiduciary duty by trying to exercise Article XVI. Their exercise of Article XVI, however, was proper because it was a lawful provision and appellants followed the required procedures.

Finally, Kurtz and Mackay claim that appellants had an irreconcilable conflict of interest, which they resolved in favor of themselves. We disagree. The district court properly concluded, based on the uncontested facts, that Ben Miller was effectuating a lawful bylaw by attempting to buy Kurtz's and Mackay's shares for lower than fair value. Hence the district court correctly held that appellants did not breach their fiduciary duty to Kurtz and Mackay as a matter of law.

## VI. *Motion to Strike*

In reaching our decision, we have not relied on copies of the Rudolph and Oscar Miller estates' tax returns, which appellants included in their reply brief, but which were not before the district court. *Mitterhauser v. Mitterhauser*, 399 N.W.2d 664, 667 (Minn. App.1987) (this court may not base its decision on matters outside the record on appeal), *pet for rev. denied* (Minn. June 30, 1987). Kurtz's and Mackay's motion to supplement the record on appeal with copies of Ben Miller's 1989 and 1991 wills is denied. We deny Kurtz's and Mackay's motion for sanctions.

## DECISION

The district court properly concluded that the stock redemption provision in Miller Waste's bylaws was valid and enforceable. The district court erred by allowing Kurtz and Mackay to vote the shares of Rudolph and Oscar Miller's estates when Miller Waste had exercised its option to redeem the shares pursuant to the stock redemption provision.

**Affirmed in part and reversed in part.**