**ROOF DEPOT, INC., Respondent,**

v.

**Daniel W. OHMAN, Defendant,**

**Joan Kay Vanderpool, Appellant.**

No. C5–01–1112.

Court of Appeals of Minnesota.

Feb. 6, 2002.

Kay Nord Hunt, Ronald L. Haskvitz, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

Mark M. Nolan, Stapleton, Nolan, MacGregor & Thompson, St. Paul, for appellant.

Considered and decided by WILLIS, Presiding Judge, CRIPPEN, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

WILLIS, Judge.

Appellant challenges the district court's grant of summary judgment in favor of respondent, arguing that the district court erred by concluding that (1) her lien on defendant's shares of stock was invalid and unenforceable and (2) respondent was not estopped from enforcing the stock-transfer restrictions. Because the district court did not err, we affirm.

## FACTS

The facts in this case are undisputed. Respondent Roof Depot, Inc., is a closely held Minnesota corporation. Defendant Daniel Ohman is the former president of Roof Depot and the former husband of appellant Joan Vanderpool. During his marriage to Vanderpool, and while he was president of Roof Depot, Ohman acquired shares of stock in Roof Depot, Inc., and a related corporation, Roof Depot Supply, Inc. ("the Roof Depot Entities").

In 1998, Vanderpool and Ohman's marriage was dissolved. Under the marital-dissolution decree, Ohman retained all of his shares of stock in the Roof Depot Entities, and, to equalize the property division, Ohman was ordered to pay Vander-

pool $150,000. The decree purported to secure Ohman's debt to Vanderpool by a lien in her favor on Ohman's stock in the Roof Depot Entities. The lien was to be created by filing a UCC–1 Financing Statement signed by Ohman. Vanderpool filed such a statement on November 2, 1999.

The certificates representing Ohman's stock in the Roof Depot Entities bore legends stating that the certificates were subject to a Stock Restriction Agreement and a Shareholder Control Agreement, respectively, and that copies of the agreements were on file with the corporations. Both agreements restricted transfers of the stock represented by the certificates, including restrictions on pledging or encumbering the stock.

Ohman did not inform Vanderpool of the transfer restrictions before the dissolution decree was entered, nor did he comply with the terms of the transfer-restriction agreements: He did not notify Roof Depot of his intent to encumber his shares with a lien or obtain its consent, written or otherwise, to pledge or encumber his shares; he did not offer Roof Depot the opportunity to exercise its right of first refusal under the Stock Restriction Agreement; and, although not specifically addressed by the district court, nothing in the record suggests, and no party argues, that Ohman offered Roof Depot Supply the opportunity to exercise its similar right of first refusal.

In October 1999, Ohman was terminated by Roof Depot, based on allegations that he had wrongfully taken more than $1,000,000 from the corporation. Ohman entered into a restitution agreement with Roof Depot under which Ohman agreed to transfer back to the respective corporations his stock in the Roof Depot Entities. Ohman's shares were redeemed and their value credited against his indebtedness to Roof Depot, leaving a remaining debt of $152,554.

In July 2000, Roof Depot sought a declaratory judgment, asking, inter alia, that Vanderpool's purported lien against Ohman's shares in the Roof Depot Entities be held "invalid and unenforceable and/or inferior to the rights of [Roof Depot] in those shares."

Vanderpool counterclaimed, seeking (1) declaratory judgment that her lien interest in the shares of Roof Depot was valid, enforceable, and superior to the interests of Roof Depot, Inc., and Roof Depot Supply, Inc., and (2) foreclosure on her lien interest and a deficiency judgment against Ohman for any remaining balanced owed.

Both Roof Depot and Vanderpool moved for summary judgment. The district court granted summary judgment in favor of Roof Depot, finding that Vanderpool's lien on Ohman's shares of stock was invalid and unenforceable and that Roof Depot was not estopped from enforcing the stock-transfer restrictions. This appeal follows.

**ISSUES**

I. Did the district court err by concluding that Vanderpool's lien on Ohman's shares of stock is invalid and unenforceable?

II. Did the district court err by concluding that Roof Depot is not estopped from enforcing the stock-transfer restrictions?

**ANALYSIS**

On appeal from summary judgment when the facts are undisputed, this court's review is limited to determining whether the district court erred in its application of the law. *Associated Builders & Contractors v. Ventura*, 610 N.W.2d 293, 298 (Minn.2000).

## I.

■ Vanderpool argues that the district court erred by concluding that her lien on Ohman's shares of stock in the Roof Depot entities was invalid and unenforceable because the language of the transfer restrictions specifically provides that any transfer of the stock is merely subject to Roof Depot's right of first refusal. Under Minnesota law and the language of the transfer-restriction agreements, Vanderpool's argument fails.

Minnesota law allows transfer restrictions on securities as long as they are "not manifestly unreasonable under the circumstances" and are "noted conspicuously on the face or back of the certificate." *See* Minn.Stat. § 302A.429, subd. 2 (2000). A restriction is conspicuous and effective if "the existence of the restriction is stated on the certificate and reference is made to a separate document creating or describing the restriction." Minn.Stat. § 302A.429, subd. 2; *see* Minn.Stat. § 336.8–204 (2000) (providing that transfer restrictions are effective even as to persons without knowledge of restriction so long as notice appears conspicuously on the certificate).

Several types of restrictions are deemed "not manifestly unreasonable," including (1) the requirement that a shareholder offer the company or other shareholders a right of first refusal, or option, before transferring the shares; (2) an obligation on a person to purchase shares so restricted; (3) a restriction requiring consent from the company or other shareholders before shares can be transferred or encumbered; and (4) any other restriction the purpose of which is to maintain control of a corporation by the same group of investors. *See* Minn.Stat. Ann. § 302A.429 advisory comm. cmt. (West 1985); *see also Miller Waste Mills, Inc. v. Mackay,* 520 N.W.2d 490, 494–95 (Minn.App.1994) (holding that stock-transfer restriction requiring stockholder to give corporation right of first refusal or option to purchase is not manifestly unreasonable), *review denied* (Minn. Oct. 14, 1994).

Here, the stock certificates for Roof Depot, Inc., and Roof Depot Supply, Inc., bear conspicuous notices of the existence of transfer restrictions. Ohman's stock certificate in Roof Depot, Inc., bears the following legend:

> The transfer of the shares represented by the within certificate is restricted under the terms of a Stock Restriction Agreement dated as of the 2nd day of March, 1992.

The Stock Restriction Agreement includes the following transfer restrictions:

> 1. * * * The Shareholder shall not sell, assign, give, pledge, encumber or otherwise transfer, whether voluntarily, involuntarily, directly, indirectly, by operation of law or otherwise (hereinafter collectively referred to as "dispose of"), all or any part of his shares in the Corporation, or any interest in his shares, except under the following conditions:
>
> > a. If the Shareholder desires to dispose of his shares he must first obtain the written consent of the Corporation. * * *
> >
> > b. In the absence of such written consent, the Shareholder shall not dispose of all or any part of his shares in the Corporation now owned or hereafter acquired by him without first offering the shares to be disposed of for sale to the Corporation * * *.
>
> No attempted transfer of any shares in the Corporation not in accordance with the terms of this Agreement shall be reflected on the Corporation's books.

Ohman's certificate for stock in Roof Depot Supply, Inc., bears the following legend:

NOTICE, that these securities are subject to a Shareholder Control Agreement which is controlling over each Shareholder, beneficial holder, holder of a voting trust and their successors or assigns. A copy of said agreement may be found in the corporate record book or may be obtained by written request upon an officer thereafter within ten (10) days at the principle [sic] office of the Corporation.

The Shareholder Control Agreement referred to on the Roof Depot Supply, Inc., stock certificate provides, in part:

ARTICLE 3: *Transfer Restrictions.* No Shareholder shall, while this Agreement is in force, sell, assign, encumber, pledge or otherwise dispose of any shares of capital stock of the Corporation now owned or hereafter acquired by him, except in accordance with ·the terms of this Agreement.

\* \* \* \*

ARTICLE 7: *Buy–Sell Agreement.* In the event any holder of the capital stock of this Corporation desires to sell or dispose of his shares, or any portion thereof, or upon the death of any Shareholder, it is the purpose of this provision (a) to provide for the purchase by the Corporation of a stockholder's shares should he desire to dispose of any of his stock in the Corporation during his lifetime, and (b) to provide for the purchase by the Corporation of a stockholder's interest therein in the event of his death. \* \* \*

Section 7.01: Inter Vivos Transfers. No shareholder shall, during his lifetime, transfer, encumber, give, pledge, assign, bequeath, sell or otherwise dispose of any portion or all of his stock interest in the Corporation whether voluntarily or involuntarily, directly or indirectly by operation of law, or otherwise, unless he shall first offer it to the Corporation at the price set forth in 7.04.

The stock certificates bear conspicuous notice of the existence of stock-transfer restrictions and refer to "separate document[s] creating or describing the restriction." *See* Minn.Stat. § 302A.429, subd. 2. Further, by requiring notice to and the consent of Roof Depot before a pledge, encumbrance, or other disposition of shares could be effective, and by giving the Roof Depot Entities a right of first refusal to purchase the shares, the restrictions are not "manifestly unreasonable" because they are reasonable means to ensure that the management and control of the business remains in the group of investors or with people well known to them. *See Miller Waste Mills*, 520 N.W.2d at 494–95.

In *Castonguay v. Castonguay*, 306 N.W.2d 143 (Minn.1981), the Minnesota Supreme Court addressed the validity of a stock-transfer restriction in the context of a property award in a marital-dissolution decree. *Castonguay* involved a husband's appeal in a marital-dissolution proceeding in which the district court awarded the wife one-half of the husband's shares in the closely held corporation of which he was president. 306 N.W.2d at 144. The stock at issue was subject to transfer restrictions. *Id.* at 144–45. The wife argued that, while the stock-transfer restrictions were valid, they did not apply where the transfer at issue was involuntary, i.e., pursuant to a court order. *Id.* at 145. The Minnesota Supreme Court held that "[r]estrictions on the sale of corporate stock apply only to voluntary sales, and not to transfers by operation of law, in the *absence* of a specific provision to that effect." *Id.* (emphasis added) (quotation omitted).

Here, both the Roof Depot, Inc., and the Roof Depot Supply, Inc., transfer-restriction agreements prohibit involuntary and voluntary transfers, directly or indirectly,

by operation of law or otherwise. Ohman's stock was subject to these restrictions when he pledged or encumbered his stock to secure his debt to Vanderpool. Ohman did not give written notice to Roof Depot of his intent to pledge or encumber his shares, nor did he offer the Roof Depot Entities the opportunity to exercise their rights of first refusal to purchase the shares.

Because Ohman did not abide by the terms of the transfer-restriction agreements, a lien on Ohman's stock was not created in Vanderpool's favor. We conclude, therefore, that the district court did not err by concluding that Vanderpool's lien was invalid and unenforceable.

## II.

Vanderpool argues that if this court determines that her lien is invalid and unenforceable, then Roof Depot should be estopped from asserting any rights under the transfer-restriction agreements.

A party seeking to invoke the doctrine of equitable estoppel has the burden of proving that (1) promises or inducements were made; (2) the party reasonably relied upon the promises; and (3) the party will be harmed if estoppel is not applied. *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn.1990).

Vanderpool argues that Ohman, as Roof Depot's president, had apparent authority to act as an agent of the company and misrepresented to her that his shares of stock could be pledged as security for his debt to her. Vanderpool asserts that she never knew of the stock-transfer restrictions, that she relied on Ohman's misrepresentations, and that she will be harmed if Roof Depot is not estopped from enforcing the transfer restrictions.

Apparent authority is usually based on an affirmative act of the principal. *Va-*

*cura v. Haar's Equip., Inc.*, 364 N.W.2d 387, 391 (Minn.1985). It includes the following: (1) manifestation by the principal that another is its agent; (2) the person who deals with the supposed agent must know of these manifestations at the time of dealing; and (3) the manifestation of apparent authority must be by the principal's actions, not the agent's. *See Truck Crane Serv. Co. v. Barr–Nelson, Inc.*, 329 N.W.2d 824, 826 (Minn.1983); *Hockemeyer v. Pooler*, 268 Minn. 551, 562, 130 N.W.2d 367, 375 (1964).

Here, there was no manifestation by Roof Depot that Ohman was acting as its agent when Ohman assigned his shares to Vanderpool. Although Ohman was president of Roof Depot, he was acting with respect to his own shares, not acting as a representative of Roof Depot. Ohman did not assign his shares in "the ordinary course of business" on behalf of Roof Depot. *See Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 455, 458–60 (Minn.App. 2001) (holding that corporate president has apparent authority to enter into contract with an employee when the contract involves matters within the corporation's ordinary course of business), *review denied* (Minn. July 24, 2001). We conclude that Roof Depot is not estopped from enforcing the transfer restrictions.

## DECISION

Because the district court did not err by concluding that Vanderpool's lien was invalid and unenforceable or by concluding that Roof Depot is not estopped from enforcing the stock-transfer restrictions, the district court did not err in granting summary judgment in Roof Depot's favor.

**Affirmed.**