**In re Marriage of Marilyn J. CASTONGUAY, Petitioner, Respondent,**

v.

**Paul R. CASTONGUAY, et al, Appellants.**

**No. 51719.**

Supreme Court of Minnesota.

June 5, 1981.

Meyer, Nelson & Miller, Robert J. Miller and Roger N. Eye, Robbinsdale, for appellants.

Henson & Efron and Alan C. Eidsness, Minneapolis, for petitioner, respondent.

SIMONETT, Justice.

In this marriage dissolution proceeding the trial court ordered that half the husband's shares in a closely held corporation be transferred to his wife, notwithstanding a provision in the corporate articles prohibiting stock transfers without first offering the shares to the corporation and the other stockholders at book value. The respondent husband appeals this ruling. He also appeals the trial court's valuation of his shares of stock in a second corporation. We reverse in part and affirm in part.

1. The most important asset of this 22-year marriage is Paul Castonguay's 43% stock interest in F–L Property, Inc., with a current value of $298,058 and a book value of $52,390.56. F–L Property, Inc., holds real estate for development and sale. Mr. Castonguay is the president of the corporation and one of nine stockholders. The stockholders have elected to be taxed as a Subchapter S corporation. Article VII of the articles of incorporation provides:

> No holder of shares of stock in this corporation shall sell, assign, transfer, pledge, hypothecate or in any other manner dispose of any of them, without first giving written notice to the corporation

at its registered office. In case the Corporation—or in case of its failure or refusal, the remaining shareholders of the Corporation—shall fail to pay the holder the book value of the shares desired to be disposed of, exclusive of good will, and the determination of book value of the shares by regular accountant then and there acting for the Corporation shall be final and conclusive, within 6 months from receipt of notice, then the holder may dispose of them as he shall see fit.

Notwithstanding this provision and notwithstanding the shareholders have voted not to consent to a transfer of shares to Mrs. Castonguay, the trial court ordered transfer of one-half of Mr. Castonguay's shares to his wife.[1]

Respondent, Mrs. Castonguay, does not challenge the validity of the stock transfer restriction but claims, rather, that it does not apply in this case to an involuntary transfer, a transfer ordered by the court.[2] We agree.

■ A Minnesota corporation may place restrictions on transfer of its stock. Minn. Stat. § 301.04 (1980). Minnesota, like most states, has gone on record favoring stock transfer restrictions in close corporations.

> [W]e see no reason why stockholders may not mutually contract with each other that, whenever any of them wishes to sell stock, the others, or the corporation, shall have the exclusive right, or option, to purchase it during a limited time after notice of the wish to sell.

*Model Clothing House v. Dickinson*, 146 Minn. 367, 371, 178 N.W. 957, 958 (1920). In *Model Clothing*, we explained why such restrictions are indispensable to a small corporation: "A corporation, as a matter of business prudence, may legitimately desire to keep its stock in the hands of those who are

congenial and will work together for the success of the enterprise * * *." 146 Minn. at 371–72, 178 N.W.2d at 959.

■ Nevertheless, any restriction on transfer of stock must be explicitly worded. Although the issue has not previously been before us, the general rule elsewhere has long been that "involuntary transfers" are not included within a transfer restriction clause unless the contrary conclusion is inescapable. 18 Am.Jur. *Corporations* § 391 at 900 (1965). We subscribe to the settled majority rule, which may be summarized as follows: "[R]estrictions on the sale of corporate stock apply only to voluntary sales, and not to transfers by operation of law, in the absence of a specific provision to that effect." 18 C.J.S. *Corporations* § 391 at 921 (1939).

■ Having said this, the question remains whether a divorce court transfer should be deemed an involuntary transfer. Only two states have expressly permitted divorce court transfers in contravention to a stock transfer restriction, Louisiana and Texas. *Messersmith v. Messersmith*, 229 La. 495, 86 So.2d 169 (1956); *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192 (Civ.App. Tex.1975). Both, however, are community property states. Respondent argues the community property rationale should apply here, since it is analogous to the marital property rights respondent has in her spouse's stock under Minnesota law. We do not find the analogy persuasive. The relevant focus here is on the court-ordered transfer, which we find to be involuntary in nature. This is consistent with our decision in *Knapp v. Johnson*, 301 N.W.2d 548 (Minn. 1980), where we said a court-ordered transfer of a spouse's pension funds was an involuntary alienation and, consequently, not prohibited under ERISA.

---

1. The trial court further decreed that if the corporation or its shareholders prevented the transfer by exercising their purchase rights under Article VII, then Mr. Castonguay would give his promissory note for $96,638.44 to his wife. The amount of the note would represent the difference between half the current value of the stock, $149,029, and the book value price paid for it, $52,390.56.

2. F–L Property, Inc., was not a party in the dissolution proceeding. In the interest of judicial economy, F–L Property, Inc., has agreed the issue of whether its stock transfer restriction applies to the divorce court transfer may be decided in this appeal and that the corporation will be bound thereby.

We hold that a transfer of stock ordered by the court in a marriage dissolution proceeding is an involuntary transfer not prohibited under a corporation's general restriction against transfers unless the restriction expressly prohibits involuntary transfers. Ordinarily, for drafting purposes, we think use of the phrase "involuntary transfers" would be deemed to encompass divorce court transfers. No such phrase was used here, however; and the general language is inadequate to prohibit the court's transfer of the F–L stock.

Consequently, the trial court's decree ordering transfer of the shares from Mr. Castonguay to Mrs. Castonguay is effective, free of any option repurchase rights under Article VII of the corporation's articles of incorporation. Appellant claims this results in an unconstitutional interference with vested property and contract rights of the other shareholders, but clearly this is not so. The argument presupposes the stock was subject to charter restrictions on involuntary transfers, when in fact it is not. Such a restriction could have been validly created, but, in this case, it was not.

2. Though the stock is unfettered, appellant argues the trial court nevertheless abused its discretion in transferring it outright to Mrs. Castonguay. Even without a restriction against involuntary transfers, appellant argues the policy reasons for such a restriction remain and should be honored. We agree the forced admittance of an unwelcome ex-spouse to the affairs of a closely held corporation may be disruptive. As one commentator has put it:

> [I]f one of the spouses remains as a full time employee of the business, and the other does not, the one employed full time may feel, with some justification, that permitting the shares to be transferred to his or her former spouse is unjust in that the post-divorce labor of the active shareholder is being appropriated by the inactive spouse. Indeed, the other shareholders may feel that permitting shares to be held by a former spouse of a shareholder might inhibit the diligence of the divorced employee-shareholder.

W. Gregory, *Stock Transfer Restrictions in Close Corporations*, 4 S.Ill.U.L.J. 477, 495 (1978).

In *Propper v. Propper*, 301 Minn. 100, 221 N.W.2d 566 (1974), we held an award to the wife of 35% of the husband's corporate shares was not an abuse of discretion. The corporation, in *Propper*, had no stock transfer restriction, but this court said, "While we readily concede there may be problems in having the wife a 45-percent minority stockholder, the husband has proposed no reasonable alternative * * *." 301 Minn. at 102, 221 N.W.2d at 567.

■ Here Mr. Castonguay proposes an alternative. He offers to issue to Mrs. Castonguay his promissory note for half the current value of his stock secured by a pledge of all his stock. Mrs. Castonguay rejects this offer and counters with a proposal of her own—to put the shares transferred to her outright in a voting trust. Both proposals, in substance, were submitted to the trial court, which chose neither. Since the husband's record of fulfilling his family obligations during the pendency of the action had not been good, the trial court felt the best way to secure for the wife her share of the marital asset was by an outright transfer. We believe, under the circumstances here, the shares transferred to Mrs. Castonguay should, at least, be placed in a voting trust. *See* Minn.Stat. § 301.27 (1980). This will tend to lessen discord in the management of the corporation's affairs. We remand, therefore, to the trial court for imposition of a voting trust on such terms as may be appropriate.

■ 3. The remaining issue on appeal deals with the trial court's valuation of the stock of Wil-Cast Investments, Inc., of which Mr. Castonguay is the sole stockholder. The trial court found the current market value of this stock was $191,106. Appellant claims this figure is excessive, but suggests no alternative figure, nor in his post-trial motions did appellant contest the trial court's valuation. Now appellant argues here that the trial court's valuation, among other things, failed to consider certain bank indebtedness as well as a debt to

his mother. It suffices to say the valuation of \$191,106 was the figure testified to by appellant's accountant, who did take into account the various loans and debts. The trial court's decision is to be affirmed if it has an acceptable basis in fact and principle even though this court may have taken a different approach. *Bollenbach v. Bollenbach*, 285 Minn. 418, 175 N.W.2d 148 (1970). The trial court's determination here is supported by the evidence. *Hertz v. Hertz*, 304 Minn. 144, 229 N.W.2d 42 (1975).

Reversed and remanded in part, and affirmed in part.