AVRETT AND LEDBETTER ROOFING AND HEATING COMPANY, A NORTH CAROLINA CORPORATION, AND WILSON H. COVINGTON v. MILDRED PAULINE S. PHILLIPS, PERSONAL REPRESENTATIVE OF THE LATE CLARENCE HUGH PHILLIPS, AND MILDRED PAULINE S. PHILLIPS, INDIVIDUALLY

No. 8626SC860

(Filed 7 April 1987)

**Corporations § 18— stock transfer agreement—not an option to purchase on death of stockholder**

Summary judgment should have been entered for defendant rather than plaintiffs in an action in which plaintiff sought to enforce a stock transfer

Avrett and Ledbetter Roofing and Heating Co. v. Phillips

agreement following the death of a shareholder where the occurrences listed in the agreement which triggered the first refusal option were all voluntary *inter vivos* transfers and the agreement contained no express restrictions on intestate or testamentary dispositions. A clause mentioning the death of a stockholder did not operate as an option to purchase at the death of a shareholder, but bound the heirs and personal representatives to the agreement by restricting voluntary transfers.

APPEAL by defendant from *Saunders, Judge*. Judgment entered 30 May 1986 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals on 14 January 1987.

This is an action seeking specific performance of a shareholders' agreement.

Avrett and Ledbetter Roofing and Heating Company is a North Carolina close corporation which has done business in Charlotte for more than sixty years. In 1958 it was owned 50% by Ledbetter, 25% by Phillips, 12.5% by plaintiff Covington and 12.5% by Kirkwood. In 1959 Ledbetter sold his interest to Phillips, Covington and Kirkwood.

On 8 December 1959 Phillips, Covington and Kirkwood executed a shareholders' agreement restricting the sale or transfer of shares by requiring each shareholder who desired to transfer shares to first offer them for sale to the corporation or to the other shareholders. On 23 June 1965 the corporate bylaws were amended to provide that:

Shares of stock in the corporation shall not be sold or transferred by any of the incorporators to any person other than incorporators without first giving the other incorporators an opportunity to buy said stock at its then book value, in accordance with the stock agreement dated December 8, 1959.

In 1970 Kirkwood retired and sold his stock to Phillips and Covington. Thereafter, Phillips and Covington were each 50% shareholders.

On 23 April 1984 Phillips died. His wife, defendant Pauline Phillips, was named executrix and sole beneficiary of her husband's estate under his will. At the time of Phillips' death, the company's book value was determined to be $359,303.00. Thereafter, plaintiffs tendered to Mrs. Phillips the sum of $179,651.50

representing one-half of the book value and demanded transfer of her late husband's stock. The tender and demand for transfer were made pursuant to the 1959 shareholders' agreement. Mrs. Phillips refused to transfer the stock claiming that the agreement did not restrict testamentary transfers.

Plaintiffs filed their complaint on 13 May 1985. Both parties moved for summary judgment. After holding as a matter of law that the agreement was valid and enforceable, the trial court awarded summary judgment in plaintiffs' favor. Defendant appeals.

*Henderson & Shuford by Charles J. Henderson and William A. Shuford for plaintiff-appellees.*

*Weinstein & Sturges by L. Holmes Eleazer, Jr. and William H. Sturges for defendant-appellant.*

EAGLES, Judge.

The issue on appeal is whether the trial court erred in granting summary judgment in favor of plaintiffs. Summary judgment is appropriate where there is no genuine issue as to any material fact and the rights of the parties may be determined as a matter of law. *Taylor v. Taylor*, 45 N.C. App. 449, 263 S.E. 2d 351, *rev'd on other grounds*, 301 N.C. 357, 271 S.E. 2d 506 (1980). Here there is no substantial controversy as to the facts. The existence and validity of the shareholders' agreement is not disputed. What is disputed is the legal effect of certain language in the agreement.

The 1959 shareholders' agreement provides in pertinent part that:

WHEREAS it is desired by the parties hereto that no stock owned by the parties shall be transferred, sold or assigned unless and until the same shall have first been offered for sale to the other parties; that is, the other stockholders or to the Corporation.

Now, THEREFORE, it is agreed between the stockholders and the Corporation as follows:

Each Stockholder, agrees for himself, his heirs, legatees and assigns that he will not sell, transfer, assign, pledge, encumber or otherwise dispose of his stock in the Corporation

without first offering said stock to the other Stockholders as provided in the following paragraph.

A Stockholder wishing to dispose of his stock in the Corporation, or any of it, shall first offer said stock to the remaining Stockholders in equal amounts, at a price equal to the book value of the stock or a greater amount per share to be agreed upon between the parties. The offer shall be in writing. If any Stockholder fails to accept such an offer within ninety (90) days, or accepts only part of the offer, then the selling Stockholder shall offer the remaining shares of the stock, at the same price, to the other Stockholders in writing.

If the Stockholders receiving the second offer, as stated in the last sentence of the preceding paragraph, does not accept the offer within thirty (30) days from the date of the second offer, or accepts only a part thereof, then the said selling Stockholder shall offer the remaining shares, in writing, to the Corporation at the same price, for purchase as treasury stock.

If the Corporation does not accept such offer, or all of it, within fifteen (15) days from the date thereof, then the selling Stockholder may sell the remaining shares to anyone he sees fit.

Upon the death of any Stockholder, a party hereto, his heirs and or his personal representatives shall be bound by this agreement and must offer the shares upon the same terms and conditions and in the same manner as provided herein.

The pivotal question is whether the first refusal option is triggered by the death of a stockholder. Our research discloses no North Carolina decision squarely on point but the majority rule is that general restrictions on the sale or transfer of stock do not include testamentary dispositions. See *Application of Blakeman*, 518 F. Supp. 1095 (E.D.N.Y. 1981) and cases cited therein. Restrictions on alienation or transfer of stock are not favored and consequently are strictly construed. *In re Estate of Martin*, 15 Ariz. App. 569, 490 P. 2d 14 (1971); *Matter of Estate of Riggs*, 36 Colo. App. 302, 540 P. 2d 361 (1975). Under this rule of strict construction, courts have required express restrictions on intestate or testa-

mentary dispositions. *Vogel v. Melish*, 31 Ill. 2d 620, 203 N.E. 2d 411 (1964). Words like "sell," "transfer," "assign," "convey" or "otherwise dispose of" describe voluntary *inter vivos* transfers and generally have not been held to restrict testamentary dispositions. *Id. Storer v. Ripley*, 12 Misc. 2d 662, 178 N.Y.S. 2d 7 (1958); *Taylor's Administrator v. Taylor*, 301 S.W. 2d 579 (Ky. 1957).

Here, the agreement provides that each shareholder agrees "for himself, his heirs, legatees and assigns" that he will not "sell, transfer, assign, pledge, encumber or otherwise dispose of his stock" without first offering it to the other shareholders. The occurrences listed which trigger the first refusal option are all voluntary *inter vivos* transfers. The agreement contains no express restriction on intestate or testamentary dispositions. Applying the majority rule to this language, the death of a stockholder would not trigger the first refusal option.

The majority rule cases state that death does not trigger a first refusal option unless death is mentioned as a specified contingency. *Matter of Estate of Spaziani*, 125 Misc. 2d 901, 480 N.Y.S. 2d 854 (1984). Plaintiffs argue that the following language prevents testamentary transfers at the death of a shareholder by automatically requiring the personal representative to offer the stock to the remaining shareholders or the corporation:

> Upon the death of any Stockholder, a party hereto, his heirs and or his personal representatives shall be bound by this agreement and must offer the shares upon the same terms and conditions and in the same manner as provided herein.

Plaintiffs emphasize the words "must offer" and argue that when a shareholder dies, the personal representative has no choice but to offer the stock at a price equal to book value.

Defendant, on the other hand, argues that plaintiffs' interpretation is unreasonable and inequitable. Defendant interprets the "death" provision as operating to bind the heirs and personal representative to the agreement by restricting voluntary transfers. Under defendant's analysis, the agreement contemplates only voluntary, *inter vivos* transfers and plaintiffs have no right to demand tender when no "transfer" has occurred within the meaning of the agreement. We agree.

To adopt plaintiffs' interpretation of the agreement would have the effect of obligating the personal representative to offer the shares for book value to the remaining shareholder or to the corporation. The agreement then would not operate as a first refusal option upon sale or transfer but strictly as an option to purchase at the death of a shareholder. This interpretation is unreasonable, inequitable and contrary to the intent of the shareholders as stated in the first paragraphs of the agreement: "WHEREAS it is desired by the parties hereto that no stock owned by the parties shall be transferred, sold or assigned unless and until the same shall have first been offered for sale to the other parties." Instruments should receive sensible and reasonable constructions and not ones leading to absurd or unjust results. *De-Bruhl v. Highway Commission*, 245 N.C. 139, 95 S.E. 2d 553 (1956).

The agreement does not expressly restrict testamentary transfers upon the death of a shareholder. The terms and conditions of the agreement become operative at the time of certain proposed voluntary, *inter vivos* transfers which do not include the passing of title by operation of law through a personal representative to the beneficiary of a deceased shareholder. Accordingly, the personal representative is not required to offer the stock to the sole remaining shareholder or the corporation but may distribute it in kind to the beneficiary of Clarence Hugh Phillips.

The trial court's award of summary judgment in favor of plaintiffs is reversed and the matter is remanded for entry of summary judgment in favor of defendant.

Judges WELLS and GREENE concur.