BRYAN-BARBER REALTY, INC., CAROL H. HUTCHINSON AND ELIZABETH T. NORMAN, PLAINTIFFS v. HERMAN HAROLD FRYAR, JR., AND JUDITH PREAST FRYAR WALLACE, DEFENDANTS

No. COA94-891

(Filed 5 September 1995)

**Divorce and Separation § 112 (NCI4th); Corporations § 187 (NCI4th)— stock transfer restriction—inapplicability to interspousal transfer of marital property**

A restriction on the transfer of stock does not apply to interspousal transfers of stock incident to equitable distribution absent an express provision prohibiting such transfers.

**Am Jur 2d, Corporations §§ 683-689; Divorce and Separation §§ 878 et seq.**

**Validity of restrictions on alienation or transfer of corporate stock. 61 ALR2d 1318.**

Appeal by defendant Judith Preast Fryar Wallace from judgment entered 6 May 1994 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 10 May 1995.

Plaintiffs Carol H. Hutchinson and Elizabeth T. Norman each own and hold twenty-five percent of the outstanding capital stock in Bryan-Barber Realty, a closely held North Carolina corporation. Defendant Herman Harold Fryar, Jr. (Fryar) owned and held the remaining fifty percent of the outstanding capital stock. Pursuant to a restrictive stock agreement (agreement) shareholders, successors and assigns are prohibited from selling, assigning, encumbering, or otherwise disposing of the corporation's stock except as provided in the agreement. The agreement provides, in pertinent part, that "[a] shareholder desiring to dispose of or encumber his stock other than as expressly provided for in this agreement must first obtain the written consent of the other shareholders."

On 25 February 1991, Bryan-Barber Realty sued Fryar for alleged breaches of fiduciary duty by Fryar as a former officer and director of the corporation and moved for a temporary restraining order prohibiting Fryar from transferring his shares in violation of the agreement. A temporary restaining order was entered. However, the court determined that the motion for a preliminary injunction was moot in light of a consent judgment entered 12 February 1991 between Fryar

and Judith Preast Fryar Wallace (Wallace) on Fryar's action for absolute divorce and Wallace's counterclaim for equitable distribution. The consent judgment, which was entered by Judge Allen Harrell, contained a finding of fact that Fryar owns 7,750 shares of stock in Bryan-Barber Realty, Inc., that these shares are marital property with a value of $100,00.00 and shall be the property of Wallace, "free from any and all control . . . of [Fryar] in fee simple as of . . . February 12, 1991. . . ." Judge Harrell concluded that the division of property between the parties, including the division of marital property, was part of an agreed equitable distribution and ordered that Wallace be the sole owner of certain items of marital property, including the 7,750 shares in Bryan-Barber Realty.

In September 1992, Bryan-Barber Realty obtained a judgment against Fryar and attempted to execute on the judgment by holding a sale of Fryar's stock. However, before a sale of the stock could take place a consent order was entered on 5 February 1993 directing the sheriff to deliver the stock to Wallace in compliance with the consent judgment of 12 February 1991. Thereafter, on 25 March 1993, plaintiffs filed this action for declaratory judgment against Fryar and Wallace alleging that Fryar's attempted transfer of his shares to Wallace pursuant to the consent judgment and order was in violation of the restrictive stock agreement. Copies of the consent judgment and order were attached to the complaint.

In their complaint for declaratory judgment, plaintiffs prayed that the court construe the agreement and declare the rights, status and relationships of the parties with regard to the shares of stock previously issued to Fryar. In particular, plaintiffs prayed that the court declare that (1) the agreement is valid and enforceable under the circumstances set forth in the complaint, (2) the attempted transfer to Wallace was ineffective and void as to plaintiffs, (3) the consent judgment and order are void as to plaintiffs, and (4) Fryar remains the owner of the shares in question subject to the agreement and that the court order a return of the stock to Fryar.

Wallace filed an answer and counterclaim, aserting that she owned the shares by virtue of a court-ordered transfer and that Fryar had neither transferred nor attempted to transfer the shares to Wallace. A default judgment was entered against Fryar.

Both parties filed motions for summary judgment on the issue of the validity of the stock transfer to Wallace. After considering the

pleadings, affidavits, and arguments of counsel, the court found that there was no genuine issue of material fact and that plaintiffs were entitled to judgment as a matter of law. The court ordered (1) that the attempted transfer of shares was void as to the plaintiffs, (2) that Wallace deliver *to plaintiffs* the shares in her possession, and (3) that the execution sale previously set be rescheduled for ten days after the filing of the judgment, at which time the sheriff was directed to sell the shares free and clear of any lien or interest of Wallace.

*Battle, Winslow, Scott & Wiley, P.A., by Thomas L. Young and W. Dudley Whitley, III, for plaintiffs-appellees.*

*McMillan, Kimzey & Smith, by James M. Kimzey and Martha K. Walston, for defendant-appellant.*

WALKER, Judge.

The issue on appeal is whether the trial court erred in granting summary judgment for plaintiffs. "Summary judgment is appropriate where there is no genuine issue as to any material fact and the rights of the parties may be determined as a matter of law." *Avrett and Ledbetter Roofing and Heating Co. v. Phillips*, 85 N.C. App. 248, 250, 354 S.E.2d 321, 323 (1987). The only dispute between the parties is whether the agreement prohibits the transfer of stock to Wallace.

The question of whether a stock restriction agreement prohibits the transfer of stock which is classified as marital property between spouses is one of first impression for this Court. Other jurisdictions have considered whether a stock transfer restriction applies to transfers pursuant to a court order in a marriage dissolution proceeding. *See, e.g., Durkee v. Durkee-Mower, Inc.*, 428 N.E.2d 139 (Mass. 1981); *Castonguay v. Castonguay*, 306 N.W.2d 143 (Minn. 1981); *Messersmith v. Messersmith*, 86 So. 2d 169 (La. 1956), *superseded on another matter by statute as stated in Patterson v. Patterson*, 417 So. 2d 419 (La. Ct. App.), *cert. denied*, 420 So. 2d 983 (Mass. 1982); *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192 (Tex. Civ. App. 1975).

In *Messersmith*, the Lousiana Supreme Court considered whether a first refusal option in a corporate charter prohibited a court-ordered transfer of stock which was community property from the husband to his wife. The court held that the restriction did not affect the status of the stock purchased during the existence of the

community or the rights the wife may assert thereunder. 86 So. 2d at 173. *See also Earthman*, 526 S.W.2d at 202.

In *Castonguay*, the Minnesota Supreme Court declined to adopt the community property rationale stated in *Messersmith* and instead held that a transfer of stock ordered by a court in a marriage dissolution proceeding is an involuntary transfer not prohibited under a corporation's general restriction against transfers unless the restriction expressly prohibits involuntary transfers. In so holding, the court adopted the majority rule that " 'restrictions on the sale of corporate stock apply only to voluntary sales, and not to transfers by operation of law, in the absence of a specific provision to that effect.' " 306 N.W.2d at 145 (citation omitted).

In *Avrett and Ledbetter Roofing and Heating Co. v. Phillips*, 85 N.C. App. 248, 250, 354 S.E.2d 321, 323 (1987), this Court considered whether a first refusal option which provided that each stockholder agrees "for himself, his heirs, legatees and assigns that he will not sell, transfer, assign, pledge, encumber or otherwise dispose of his stock . . . without first offering [it] to the other stockholders" applied to testamentary transfers upon the death of a shareholder. The Court noted that restrictions on alienation or transfer of stock are disfavored and thus strictly construed and that under the rule of strict construction, courts have required express restrictions on intestate or testamentary dispositions. *Id.* at 251-52, 354 S.E.2d at 323. Applying this rule, the Court held that the restriction did not apply since its terms and conditions became operative at the time of certain proposed voluntary, *inter vivos* transfers which did not include the passing of title by operation of law through a personal representative to the beneficiary of a deceased shareholder. Thus, the agreement did not expressly restrict testamentary transfers upon the death of a shareholder. *Id.* at 253, 354 S.E.2d at 324.

In the case *sub judice*, the agreement requires a shareholder who wishes to sell, assign, encumber or otherwise dispose of the corporation's stock other than as expressly provided for in the agreement to obtain the written consent of the other shareholders. The agreement contains no express provision regarding the interspousal transfer of shares incident to equitable distribution. The spouse has neither joined in the agreement nor has she waived her interest in the stock. We are not prepared to cut off the marital interest of a spouse under these circumstances. We hold that, under the rule of strict construc-

tion, a restriction on the transfer of stock does not apply to inter-spousal transfers of stock which is marital property absent an express provision prohibiting such transfers.[1] Thus, the transfer of stock from Fryar to Wallace was not in violation of the agreement and the entry of summary judgment for plaintiffs is reversed and remanded for entry of summary judgment for Wallace.

Reversed and remanded.

Judges COZORT and JOHN concur.

---

    1. *See* Russell Robinson, II, *Robinson on North Carolina Corporation Law* § 9.6 (1990) (advising the drafter to deal specifically with divorce-related problems such as the applicability of the shareholders' agreement to valuation in a divorce proceeding and the voting of shares that are either tied up in a divorce action or distributed to a nonshareholder spouse under the equitable distribution laws, and suggesting that it may be necessary for the shareholder's spouse to join in the agreement).