*In re* MARRIAGE OF SUSAN D. DEVICK, Petitioner-Appellee, and STEVEN D. DEVICK, Respondent (Platinum Technology, Inc., Third-Party Respondent-Appellant).

Second District    No. 2—99—1128

Opinion filed August 25, 2000.

910

Nancy Scheurwater Hunter and Erin S. Shaw, both of Latham & Watkins, of Chicago, for appellant.

Dennis C. Waldon, of Lavin & Waldon, P.C., of Chicago, for appellee.

JUSTICE RAPP delivered the opinion of the court:

Third-party respondent, Platinum Technology, Inc. (Platinum), a Delaware corporation, appeals the trial court's granting of summary judgment in favor of petitioner, Susan D. Devick. Platinum argues that (1) the trial court lacked subject matter jurisdiction, and (2) the trial court erred in granting summary judgment in Susan's favor. We affirm.

The record indicates that a judgment of dissolution of marriage was entered on April 16, 1996, between Susan D. and Steven D. Devick. A marital settlement agreement entered into by the parties was incorporated into the judgment of dissolution of marriage. Pursuant to the marital settlement agreement, Susan was to "retain, as her sole and separate property free and clear of any and all rights, claims or interests of [Steven,] *** 127616 shares of Platinum Technology, Inc. stock." Steven was required to accomplish the transfer of the Platinum shares of stock within 30 days. The interest in Platinum was jointly acquired during the parties' marriage, and Steven was a corporate director of Platinum.

On June 4, 1996, Susan received the stock certificate representing 127,616 shares of Platinum stock. The stock certificate contained the following restrictive legend:

"The shares represented by this certificate may not be offered, sold, pledged, exchanged, transferred or otherwise disposed of or encumbered, nor may any offers or agreements relating thereto be made, at any time prior to the date Platinum Technology, Inc. (the 'company') shall publicly release a statement of the company's consolidated financial results for the quarterly period ending June 30, 1996."

Susan then learned that Steven, as a director of Platinum, had entered into affiliate agreements on March 8, 1996, as part of a merger with two other corporations, which provided as follows:

"Affiliate agrees not to transfer (except as may be specifically required by Court Order) or otherwise dispose of or encumber the buyer shares or any new shares (as hereinafter defined) or to make any offer or agreement relating thereto at any time prior to the expiration date."

Susan was not informed of these restrictions prior to the entry of the judgment of dissolution of marriage.

On July 1, 1996, Susan filed a petition to enforce the judgment of dissolution of marriage seeking to obtain unrestricted shares of Platinum. On July 16, 1996, Susan filed an emergency petition seeking the

same relief and alleging that Platinum may be a necessary third-party defendant to the case. On that same date, the trial court entered an order providing that Platinum may be named as a third-party defendant in this case.

On December 11, 1996, Susan filed a first amended petition against Steven and Platinum seeking the removal of the restriction on her shares. On March 10, 1997, Susan filed a supplemental first amended petition against Steven and Platinum, again seeking the removal of the restriction on her shares.

On November 10, 1997, the trial court denied Platinum's motion for a judgment on the pleadings and ruled that it had jurisdiction over Platinum. The trial court denied Platinum's motion for reconsideration and/or clarification on December 27, 1998.

On June 12, 1998, Susan filed a motion for summary judgment alleging that Platinum had violated section 8—401 of the Uniform Commercial Code—Investment Securities (Uniform Commercial Code or UCC) by refusing to transfer the shares of stock to her without restriction. 810 ILCS 5/8—401 (West 1998). Susan subsequently amended her motion for summary judgment, making the same argument.

On June 15, 1998, Platinum filed a cross-motion for summary judgment, arguing that it was not liable to Susan because the affiliate agreements executed by Steven entitled Platinum to restrict the sale of the shares of stock being transferred to Susan until the publication of Platinum's second quarter 1996 results.

On May 4, 1999, the trial court granted Susan's motion for summary judgment and denied Platinum's cross-motion for summary judgment. The trial court then entered judgment against Platinum and in favor of Susan in the amount of $719,936, representing Susan's loss resulting from Platinum's failure to issue unrestricted stock.

On September 17, 1999, the trial court denied Platinum's motion to reconsider. Platinum timely appealed.

## I. SUBJECT MATTER JURISDICTION

■ Platinum contends that the trial court lacked subject matter jurisdiction. We review a trial court's determination regarding subject matter jurisdiction *de novo*. *City of Marseilles v. Radke*, 287 Ill. App. 3d 757, 761 (1997).

Susan argues that Platinum has waived this issue by adjudicating its rights before the trial court to a final judgment without objecting to jurisdiction. Susan also argues that Platinum has waived this issue by failing to specify the applicable November 10, 1997, order in its notice of appeal.

The record is clear that Platinum objected to subject matter jurisdiction in the trial court before having its rights adjudicated in the trial court to a final judgment. In any event, the issue of subject matter jurisdiction cannot be waived. *Currie v. Lao*, 148 Ill. 2d 151, 157 (1992). Moreover, even if a particular order is not specified in a notice of appeal, it is reviewable if it was a step in the procedural progression leading to the judgment specified in the notice of appeal. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435-36 (1979). We will therefore review Platinum's claim that the trial court lacked subject matter jurisdiction.

The essence of Platinum's argument is that a court in the domestic relations division hearing a marital dissolution proceeding may only hear and rule upon matters specifically set forth in the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 1998)). Thus, according to Platinum, the trial court lacked jurisdiction to hear claims concerning an alleged violation of the Uniform Commercial Code. We find no merit in Platinum's argument.

■ Subject matter jurisdiction "refers to [a] court's power to hear and determine cases of the general class or category to which [the] proceedings in question belong." Black's Law Dictionary 1425 (6th ed. 1990); *People ex rel. Scott v. Janson*, 57 Ill. 2d 451, 459 (1974). The distinction between courts of law and equity has been abolished under the 1970 Illinois Constitution, and our court system is now a unified one with original jurisdiction of justiciable matters. Ill. Const. 1970, art. VI, § 9; *In re Marriage of Isaacs*, 260 Ill. App. 3d 423, 427 (1994).

The allocation of judicial responsibilities to various divisions of a circuit court does not impose barriers to jurisdiction but rather reflects a concern for administrative convenience. *Isaacs*, 260 Ill. App. 3d at 427-28. The trial court judge in a domestic relations division has jurisdiction to hear all issues that are justiciable in nature. *In re Marriage of Pahlke*, 120 Ill. App. 3d 1009, 1014 (1983).

■ Although the Act makes no provision for the filing of a third-party action during a dissolution proceeding to determine a party's right in marital property held by a third person, such authority exists under section 2—406 of the Code of Civil Procedure (735 ILCS 5/2—406 (West 1998)), which provides in pertinent part:

"(a) If a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in. If a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct such person to be made a party." 735 ILCS 5/2—406(a) (West 1998).

A party is necessary to a full determination of the issues if the party is:

"one whose presence in the suit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence [citations]; (2) to reach a decision which will protect the interests of those who are before the court [citations]; or (3) to enable the court to make a complete determination of the controversy [citation]." *Lerner v. Zipperman*, 69 Ill. App. 3d 620, 623 (1979). Thus, the trial court's equity power extends, when necessary, to comply with the dictates of the Act over third-party actions. *Isaacs*, 260 Ill. App. 3d at 428.

■ In the instant case, the stock interest in Platinum was acquired during the course of the Devicks' marriage and was subject to disposition by the trial court in the domestic relations division. See 750 ILCS 5/503 (West 1998). The trial court entered a judgment of dissolution of marriage incorporating the marital settlement agreement, which provided Susan with 127,616 shares of Platinum stock as her sole and separate property, the transfer of which Steven was to accomplish within 30 days. After Susan received the restricted shares, she attempted to enforce the judgment of dissolution of marriage by seeking the unrestricted transfer to her of the 127,616 shares of Platinum stock. The trial court in the domestic relations division already had jurisdiction of the Devicks and the Platinum stock pursuant to the dissolution action. By allowing the joinder of Platinum in that action, the trial court acted to preserve the marital asset and Susan's equity in it. The facts of this case and the principles of law set forth above demonstrate that the joinder of Platinum in this action was proper.

## II. SUMMARY JUDGMENT

Platinum contends that the trial court erred in granting summary judgment in favor of Susan. We will affirm a trial court's granting of summary judgment if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Largosa v. Ford Motor Co.*, 303 Ill. App. 3d 751, 753 (1999). We review an order granting summary judgment *de novo*. *Davis v. Haas & Haas, Inc.*, 296 Ill. App. 3d 369, 372-73 (1998).

Platinum argues that (1) the trial court erred in finding that section 8—401 of the Uniform Commercial Code (810 ILCS 5/8—401 (West 1998)) is applicable to an issuer's refusal to transfer shares of stock without restriction; (2) the trial court erred in finding that the affiliate agreements did not give Platinum the right to impose a restrictive legend on the shares it transferred to Susan; and (3) the trial court abused its discretion in holding Platinum liable as a result of its

"misperception" that Platinum acted improperly during discovery. We will address each of Platinum's arguments *seriatim*.

## A. SECTION 8—401 OF THE UNIFORM COMMERCIAL CODE

The central question in this appeal is the proper interpretation of section 8—401 of the Uniform Commercial Code (810 ILCS 5/8—401 (West 1998)). We review a question of statutory construction *de novo*. See *Bank of Waukegan v. Kischer*, 246 Ill. App. 3d 616, 621 (1993). In construing statutes, courts must ascertain and give effect to the legislature's intent. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 173 (1998). Courts look to the statutory language as the best indication of legislative intent. *Mitchell*, 181 Ill. 2d at 173. If the language of the statute is clear, it will be given effect without resorting to other aids of construction. *Mitchell*, 181 Ill. 2d at 173.

■ Section 8—401 of the UCC provides:

"Duty of issuer to register transfer.

(a) If a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if:

(1) under the terms of the security the person seeking registration of transfer is eligible to have the security registered in its name;

(2) the indorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(3) reasonable assurance is given that the indorsement or instruction is genuine and authorized (Section 8—402);

(4) any applicable law relating to the collection of taxes has been complied with;

(5) the transfer does not violate any restriction on transfer imposed by the issuer in accordance with Section 8—204;

(6) a demand that the issuer not register transfer has not become effective under Section 8—403, or the issuer has complied with Section 8—403(b) but no legal process or indemnity bond is obtained as provided in Section 8—403(d); and

(7) the transfer is in fact rightful or is to a protected purchaser.

(b) If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer." 810 ILCS 5/8—401 (West 1998).

■ Platinum argues that section 8—401 only regulates an issuer's

obligation to timely register a transfer. According to Platinum, section 8—401 does not proscribe the imposition of a restrictive legend on stock certificates unless the transfer could not be effected without the removal of the restrictive legend.

Susan argues that Platinum has waived this argument by failing to raise it in the trial court. The record indicates that the parties fully briefed this issue and that Platinum raised the issue in its motion for reconsideration. Thus, the issue has not been waived by Platinum.

This is an issue of first impression in Illinois. We are aware of no prior cases addressing whether section 8—401 of the UCC governs the imposition of restrictive legends on stock certificates. While no Illinois court has addressed this question, other courts have addressed the issue in interpreting their respective state's similar UCC provisions.

In *Kenler v. Canal National Bank*, 489 F.2d 482, 485 (1st Cir. 1973), the plaintiffs made repeated requests for the removal of restrictive legends on their investment shares, which the court recognized was the obvious first step and necessary incident to the contemplated transfer of such stock. The plaintiffs contended that their requests for the removal of the legends should be considered as a "request to register" transfer within the meaning of section 8—401(1) of the Maine Uniform Commercial Code (11 Me. Rev. Stat. Ann. § 8—401(1) (West 1972)), which provided in relevant part, "Where a security in registered form is presented to the issuer with a request to register transfer, the issuer is under a duty to register the transfer as requested ***." The court did not specifically decide this issue, but proceeded to decide the case under the assumption that where the removal of restrictive legends is mandatory to effect transfer of the shares and where it is clear that the shareholder intends to immediately dispose of his or her shares, a request for the removal of legends and the issuance of unrestricted certificates is substantially equivalent to a request to register transfer of those shares. *Kenler*, 489 F.2d at 486.

In *Steranko v. Inforex, Inc.*, 5 Mass. App. Ct. 253, 362 N.E.2d 222 (1977), the plaintiff demanded the removal of the restrictive legend from his stock certificates. Although not relying on the Uniform Commercial Code, the court held that plaintiff was entitled to recover damages for the decline in the value of the stock from the corporation as a result of the corporation's wrongful refusal to authorize the release of the restrictions. *Steranko*, 5 Mass. App. Ct. at 267, 362 N.E.2d at 232. The court held that the transfer agent bank's refusal to remove the restrictive legends from the shares did not qualify as a refusal to register a transfer under the terms of section 8—401(2) of the Massachusetts Uniform Commercial Code (Mass. Gen. L. ch. 106, § 8—401(2) (West 1976)), which provided, "Where an issuer is under a

duty to register a transfer of a security the issuer is also liable to the person presenting it for registration or his principal for loss resulting from any unreasonable delay in registration or from failure or refusal to register the transfer." The court, citing *Kenler*, recognized that the removal of the legend is the obvious first step in, and a necessary incident to, the contemplated transfer of such stock, but opined that it is not the equivalent of the registration of a transfer. *Steranko*, 5 Mass. App. Ct. at 274, 362 N.E.2d at 236. The court therefore held that the Uniform Commercial Code was not applicable. *Steranko*, 5 Mass. App. Ct. at 274, 362 N.E.2d at 236. The court reasoned that it would be unduly harsh to hold the bank, as transfer agent, liable when it was faced with the plaintiff's request and the corporation's order to refuse that request.

In *American Securities Transfer, Inc. v. Pantheon Industries, Inc.*, 871 F. Supp. 400 (D. Colo. 1994), the court examined the applicability of section 4—8—401(1) of the Colorado Uniform Commercial Code (Colo. Rev. Stat. § 4—8—401(1) (1992)) to a case involving the duty to remove a restrictive legend. Under section 4—8—401(1) of the Colorado UCC, an issuer has a duty to register the transfer of securities as requested if certain preconditions are met. The court interpreted the statute as holding issuers and transfer agents liable for the wrongful refusal to register a transfer and the wrongful registration of a transfer. *American Securities Transfer*, 871 F. Supp. at 404. The court, citing *Kenler*, acknowledged that the shareholder's reissuance request was the obvious first step in and a necessary incident to a contemplated transfer of the stock and concluded that the shareholder's "reissuance request is considered a 'request to transfer shares' within the meaning of § 4—8—401." *American Securities Transfer*, 871 F. Supp. at 404-05.

In *Bender v. Memory Metals, Inc.*, 514 A.2d 1109 (Del. Ch. 1986), the plaintiff argued that the defendant was under a duty to register the transfer of the plaintiff's shares (and as a predicate thereto, to issue a "clean" certificate) pursuant to section 8—401 of the Delaware Uniform Commercial Code (Del. Code Ann. tit. 6, § 8—401 (1984)). The court first noted that every holder of a certificated stock is entitled to a certificate representing the number of shares registered in proper certificate form without a legend or restriction where such a legend is no longer appropriate. *Bender*, 514 A.2d at 1115. The court stated that the plaintiff had a claim for wrongful refusal to issue a stock certificate wholly independent of the Uniform Commercial Code. *Bender*, 514 A.2d at 1115.

The *Bender* court went on to reject the defendant's argument that the registration of a transfer is not equivalent to the issuance of a new

certificate and concluded that the defendant's argument ignores the realities of the securities transfer process. The court explained:

> "Where certificated stock is transferred, the issuance of a new certificate to the transferee is normally an integral step in that process. And where the stock is restricted, the issuance of a new, clean certificate to the transferor is normally the essential first step. Given those commercial realities, it is reasonable to construe the term 'register the transfer', as used in § 8—401 of the UCC, to include those ministerial acts that normally accompany such registration, including, where applicable, the issuance of a new certificate." *Bender*, 514 A.2d at 1115.

The *Bender* court rejected the *Steranko* court's analysis because of its unduly restrictive reading of section 8—401, while acknowledging the *Kenler* court's assumption that the removal of a restrictive legend would constitute a request to register a transfer. *Bender*, 514 A.2d at 1115 n.8.

■ Our review of these cases and Illinois law leads us to conclude that section 8—401 of the UCC is applicable to the imposition of restrictive legends on stock certificates. First, section 6.35 of the Business Corporation Act of 1983 authorizes the issuance of shares of a corporation represented by certificates. 805 ILCS 5/6.35 (West 1998). Section 8—204 of the UCC requires that any restriction on the transfer of a certificated security must be noted conspicuously on the security certificate. 810 ILCS 5/8—204 (West 1998). This necessarily implies that every holder of a certificated stock is entitled to have a certificate issued in proper form, without a restrictive legend where such a legend is not appropriate. See *Bender*, 514 A.2d at 1115.

■ We assume that the registration of a transfer would entail recording the certificate number, the identifying information of the shareholder, and the number and class of shares represented by the certificate, and that such registration would include recording any restrictions on the transfer. Obviously, if a stock certificate contains an improper legend or restriction, the issuer has improperly registered the transfer. It is reasonable to construe section 8—401 of the UCC as creating a duty for the issuer to "properly" register the transfer and to issue a stock certificate in proper form. We therefore conclude that the trial court did not err in finding that section 8—401 of the UCC is applicable to an issuer's refusal to transfer shares of stock without restriction.

## B. AFFILIATE AGREEMENTS

■ Platinum next argues that the trial court erred in concluding that the affiliate agreements did not give Platinum the right to impose a restrictive legend on the shares it transferred to Susan. Specifically,

Platinum argues that the affiliate agreements' restrictions are binding upon Susan because (1) Steven had the authority to restrict the shares he held jointly with Susan; (2) Steven could not transfer unrestricted shares; (3) Platinum's imposition of the restrictive legend was proper under Delaware corporation law; and (4) an unrestricted transfer was not "rightful" under section 8—401(a)(7) of the UCC. We reject defendant's arguments *in toto*.

Initially, we note that Susan argues that Steven did not have the authority to enter into the affiliate agreements due to an order entered by the trial court restraining Steven from encumbering property without Susan's consent or court order, except in the usual course of business. Susan contends that the restriction was not in the usual course of business given the fact that the shares represented approximately 33% of the assets in the marital estate. Regardless of whether Steven had the authority to enter into the affiliate agreements, we hold that the restriction is not applicable to the shares awarded Susan.

"As a general rule, provisions restricting a stockholder's right to sell or transfer his stock are regarded with disfavor and are strictly construed." 18A Am. Jur. 2d *Corporations* § 683, at 561 (1985). We note that the affiliate agreements entered into by Steven provided, in pertinent part:

> "Affiliate agrees not to transfer (*except as may be specifically required by Court Order*) or otherwise dispose of or encumber the buyer shares or any new shares (as hereinafter defined) or to make any offer or agreement relating thereto at any time prior to the expiration date." (Emphasis added.)

This is an issue of first impression in Illinois. We are aware of no prior cases addressing whether agreements restricting the transfer of stock are applicable to transfers by operation of law. Again, we find the construction of such restrictions by other jurisdictions instructive on this issue.

In *Castonguay v. Castonguay*, 306 N.W.2d 143, 146 (Minn. 1981), the Supreme Court of Minnesota held that a transfer of stock ordered by the court in a marriage dissolution proceeding is an involuntary transfer not prohibited under a corporation's general restriction against transfers unless the restriction expressly prohibits involuntary transfers. The court in *Castonguay* determined that the trial court properly ordered transfers of shares of stock to a wife free of any restrictions because the stock was not subject to any restrictions on involuntary transfers. *Castonguay*, 306 N.W.2d at 146. The court, however, held that the trial court should have placed the shares in a voting trust because the forced admittance of an ex-spouse to the af-

fairs of a closely held corporation may be disruptive. *Castonguay*, 306 N.W.2d at 146.

In *Bryan-Barber Realty, Inc. v. Fryar*, 120 N.C. App. 178, 461 S.E.2d 29 (1995), the Court of Appeals of North Carolina determined that a restriction on the transfer of stock did not apply to a spouse because the restrictive stock agreement contained no express provision regarding the interspousal transfer of shares incident to equitable distribution and because the spouse neither joined in the agreement nor waived her interest in the stock. The court therefore held that, "under the rule of strict construction, a restriction on the transfer of stock does not apply to interspousal transfers of stock which is marital property absent an express provision prohibiting such transfers." *Bryan-Barber*, 120 N.C. App. at 181-82, 461 S.E.2d at 32. The court noted that, in drafting such a restrictive stock agreement, it may be necessary for the shareholder's spouse to join in the agreement. *Bryan-Barber*, 120 N.C. App. at 182 n.1, 461 S.E.2d at 32 n.1.

Strictly construing the restrictive provision of the affiliate agreements, we determine that the restriction is applicable only to voluntary transfers and not to transfers by operation of law, such as by court order. Furthermore, we determine that the restriction does not apply to any subsequent transfers by Susan because the language of the affiliate agreements does not specifically include such a provision and because Susan neither joined in the agreements nor waived her interest in the stock.

Our holding is further supported by section 202(b) of the Delaware Corporation Law (Del. Code Ann. tit. 8 § 202(b) (1991)), which provides:

> "A restriction on the transfer or registration of transfer of securities of a corporation may be imposed either by the certificate of incorporation or by the bylaws or by an agreement among any number of security holders or among such holders and the corporation. No restriction so imposed shall be binding with respect to securities issued prior to the adoption of the restriction unless the holders of the securities are parties to an agreement or voted in favor of the restriction."

Here, the Devicks acquired their unrestricted shares of Platinum stock as joint tenants. Steven entered into the affiliate agreements without Susan's knowledge or consent. Because Susan was not a party to the agreements and never voted in favor of the restriction, the restriction is not applicable to Susan's shares.

## C. DISCOVERY SANCTION

██ Finally, Platinum contends that the trial court abused its discretion in holding Platinum liable as a result of its "misperception"

that Platinum acted improperly during discovery. We have carefully scrutinized the transcripts of the trial court's rulings and find no evidence that the trial court entered summary judgment in favor of Susan as a discovery "sanction" imposed on Platinum.

We find that the trial court's comments merely rejected Platinum's argument that Susan was an associate of the affiliate agreements. The trial court noted that Platinum's appearance in connection with discovery in the case, and its failure to provide Susan with a copy of the affiliate agreement, was relevant to whether Susan had knowledge of the restriction and a right to rely on Platinum's previous pleadings and disclosures in the matter. The trial court clearly based its decision on Platinum's violation of section 8—401 of the UCC. We therefore find no merit in Platinum's argument.

Based on the record, we cannot say that the trial court erred as a matter of law in granting summary judgment. Accordingly, we affirm the trial court's entry of summary judgment in favor of Susan and against Platinum.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

INGLIS and COLWELL, JJ., concur.