LACY J. MILLER MACHINE COMPANY, INC., JOSEPH T. BUIE, JR., AND
JAMES T. DONLEY v. GARY M. MILLER, INDIVIDUALLY, AND GARY M.
MILLER, EXECUTOR OF THE ESTATE OF LACY J. MILLER

No. 8122SC1139

(Filed 20 July 1982)

1. **Corporations § 18.1— stock purchase agreement—issue of book value of corporation—summary judgment improper**

    The trial court erred in directing the executor of an estate to convey the deceased's stock to the corporate plaintiff pursuant to a stock purchase agreement where there was an issue as to whether the book value of the corporation, upon which the price of the stock was based, was properly determined according to the agreement.

2. **Corporations § 18.1— stock purchase agreement—tendering payment within time specified—no material breach of agreement**

    In an action arising from a stock purchase agreement, failure to tender payment within the time specified in the agreement was not a material breach of the contract where corollary insurance proceeds had not been collected and the ownership of all the stock had not been determined within the period specified in the contract and where the contract provided an outside limit of six months within which tender was made.

3. **Corporations § 18.1— stock purchase agreement—specific performance—no inconsistency in asserting ownership to part of stock**

    In an action which evolved from a stock purchase agreement, requesting specific performance of the agreement was appropriate even though plaintiffs asserted ownership to a part of the stock in a separate action since it is not inconsistent to determine first the ownership of the stock before tendering the consideration for it.

APPEAL by plaintiffs and defendant from *Hairston, Judge.*
Judgment entered 25 June 1981 in Superior Court, DAVIDSON
County. Heard in the Court of Appeals 9 June 1982.

This is an action involving a stock purchase agreement. Lacy
J. Miller who died on 13 May 1980 made an agreement with the
corporate plaintiff under which the corporate plaintiff was to pur-
chase Mr. Miller's stock in the corporation after Mr. Miller's
death. Gary M. Miller, as executor of the estate of Lacy J. Miller,
refused to convey Mr. Miller's stock to the corporation and this
action was filed. The plaintiffs alleged several claims and prayed
that the corporate plaintiff be adjudged the owner of the stock
upon payment to the defendant of $1,357,130.00. The plaintiffs
also prayed for judgment for $445,067.00 and $195,034.02. They

base the claim for $445,067.00 on what they contend is an overevaluation of the stock in the corporation. They say there is a contingent liability of the plaintiff corporation in a suit which has been filed against it which should reduce the book value of the stock. They also allege that stock which the plaintiff corporation owns in Carnes-Miller Gear Company, Inc. has been overvalued which further reduces the value of stock in the plaintiff corporation. They base the claim for $195,034.02 on what they contend are advances made by the plaintiff corporation to the estate of Lacy J. Miller. The plaintiff also prayed for damages against the defendant for breach of contract, that the individual plaintiffs each have $5,000,000.00 in punitive damages, and the corporate plaintiff have $10,000,000.00 in punitive damages.

The defendant filed an answer in which he denied the material allegations of the complaint and counterclaimed. In his counterclaim he alleged that the individual plaintiffs had misapplied corporate funds, concealed assets of the corporation and paid themselves exorbitant salaries. He alleged that the plaintiff Buie had usurped a corporate opportunity.

Plaintiffs and defendant made motions for summary judgment. The papers filed in support of the motions for summary judgment established the following: Prior to his death, Lacy J. Miller owned approximately 70% of the stock in the corporate plaintiff. The two individual plaintiffs owned the balance of the stock. The corporation entered into an agreement with the stockholders, which was amended several times, for the purchase of the stock of each stockholder at his death. The first agreement, dated 5 September 1968, was between Lacy J. Miller and the corporation and provided in pertinent part:

> "1. *Death of Stockholder.* In the event of the death of the Stockholder, all of the stock owned by him at his death shall be purchased by the Corporation.
>
> 2. *Purchase price.* The purchase price for the stock (in accordance with the provisions of Paragraph 1) shall be $2.00 per share, unless the book value of the stock shall be greater than $2.00 per share, and if the book value of the stock is greater than $2.00 per share, the purchase price shall be the book value of the stock. The book value shall be determined as of the

last day of the preceding month prior to the Stockholder's death. The book value shall be determined by an independent certified public accountant selected by the president of the Corporation, and the expense of the said accountant shall be paid by the Corporation. The determination of the book value will be made in accordance with sound accounting practice . . . ;

\* \* \*

4. *Payment of the purchase price.* The purchase price shall be paid in cash within 10 days after receipt by the Corporation of the life insurance proceeds collected on life insurance described in Paragraph 3 hereof, but in any event the purchase price must be paid within a period of six months after the death of the Stockholder."

In an amendment to the original agreement the parties by agreement dated 1 January 1970 made the contract binding on the two individual plaintiffs and provided that the price per share would be $5.00 or book value, whichever was higher. In an amendment to the agreement dated 16 May 1973, the parties agreed that the corporation would purchase life insurance to fund the purchase of the stock. It was agreed that the corporation would pay $5.00 per share in addition to the price set by the agreement of 1 January 1970, and it was further agreed as follows:

"(5) Payment of Purchase Price

The purchase price at $5.00 per share shall be paid in Cash out of the insurance proceeds to the Estate of the deceased within thirty (30) days after the qualification of legal representative of such Estate."

After the death of Lacy J. Miller, James T. Donley, the president of the corporate plaintiff, retained W. H. Turlington and Company, a firm of certified public accountants, to determine the book value of the stock. An affidavit by W. H. Turlington was filed in which he said that his firm reviewed the financial statements for the four-month period ending 30 April 1980. He said a review was made rather than an audit because an audit

had been done as of 31 December 1979 by another accounting firm. He stated that for the four-month period from the date of the audit to the date of the review, the figures would not materially differ from what they would have been had an audit been made. W. Leon Rives, a certified public accountant with W. H. Turlington and Company, made an affidavit in which he stated the review conformed to generally accepted accounting principles. W. H. Turlington and Company noted in its review that the corporation carried on its books at costs stock it owned in Carnes-Miller Gear Company, Inc. They said the stock should be carried at equity which would increase its value by $138,000.00. They also noted that the corporation had recorded a provision for liability as the result of litigation in the amount of $500,000.00. The accountants said that in their opinion all the conditions required for accruing this contingent liability had not been met. According to the review performed by W. H. Turlington and Company, the book value of the stock owned by Lacy J. Miller at the time of his death was $1,357,130.00.

The defendant filed an affidavit by Bernard L. Beatty, Associate Professor at the Wake Forest University Graduate School of Management, in which he discussed a review in comparison to an audit. He was somewhat critical of a review but did not say that a review does not conform to sound accounting principles. The defendant also filed an affidavit by Rachel Hailey, a shipping clerk for the corporation, in which she stated that prior to the 31 December 1979 audit that from $300,000.00 to $400,000.00 of finished goods were concealed from the auditors as well as a substantial amount of other material in the inventory.

Prior to tendering the purchase price to the defendant, the individual plaintiffs filed an action in which they contended they owned a certain portion of stock in the corporation that was claimed by the defendant as executor of the estate of Lacy J. Miller. This action was terminated favorably for the defendant.

Some of the insurance proceeds were not collected for several months after Mr. Miller's death. On 11 November 1980 the plaintiffs tendered $1,357,130.00 to the defendant and asked for delivery of the stock which had been owned by Mr. Miller to the corporation. The defendant refused the tender.

The court entered a partial summary judgment in which it dismissed the plaintiffs' claim against the defendant as an individual and dismissed all claims of the plaintiffs for punitive damages. The court allowed the plaintiffs' motion for summary judgment as to its claim to have specific performance of the contract by directing Gary M. Miller as executor to convey the stock to the corporate plaintiff upon the payment to him of the tendered amount. The court conditioned the entry of this order upon the dismissal of the plaintiffs' claims against the defendant for $445,067.00. Plaintiffs and defendant excepted to this judgment.

*House, Blanco and Osborn, by Don R. House and Lawrence U. McGee; and Wilson, Biesecker, Tripp and Sink, by Joe E. Biesecker, for plaintiff appellants and appellees.*

*White and Crumpler, by Fred G. Crumpler, Jr., G. Edgar Parker, and Craig B. Wheaton, for defendant appellant and appellee.*

WEBB, Judge.

The plaintiffs have not assigned error to the dismissal of all claims against Gary Miller individually and the claims for punitive damages. These portions of the judgment are affirmed.

[1] As to the portion of the judgment which ordered the executor to deliver the stock formerly owned by Lacy J. Miller to the corporation upon payment of the tendered amount, we hold this was error. One of the material facts in this case is whether the book value of the corporation, upon which the price of the stock is based, was properly determined according to the contract. The plaintiffs have the burden of showing there is not a material issue as to this fact. They will also have the burden of proof as to this fact at the trial. The stock purchase agreement provides that the book value of the corporation at the designated date shall be determined by a certified public accountant in accordance with sound accounting practices. In order to show there was not a genuine issue as to this material fact, the plaintiffs relied on the affidavits of W. H. Turlington and W. Leon Rives who are certified public accountants. These affidavits showed there was a review of the financial statements of the company and the review conformed to sound accounting practices. The af-

fidavits were not contradicted on this point, and there is nothing in the record to show Mr. Turlington and Mr. Rives are not credible witnesses. A party with the burden of proof may be entitled to summary judgment where he relies on the uncontradicted affidavit of a witness to establish that a genuine issue does not exist as to a material fact. If the circumstances show, however, that a material issue exists, the motion should be denied. *See Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976). In this case we do not believe the plaintiffs have shown there is not a genuine issue as to the proper determination of the book value of the corporation. W. H. Turlington and Company reviewed the audited financial statements of the company in order to determine the book value as of 30 April 1980. The validity of W. H. Turlington and Company's review depended upon the accuracy of the 31 December 1979 audit. The affidavit of Rachel Hailey was to the effect that a substantial part of the company's inventory was concealed from the auditors at the time of the December 1979 audit. This indicates that the audit upon which the review was made was inaccurate. For this reason we believe there is an issue as to the correctness of the review and the book value of the stock.

If the defendant can establish that the review of the audit was impaired because of the concealment of assets, the plaintiffs would also not be entitled to an equitable decree enforcing the contract because they would not have clean hands. *See Hood v. Hood*, 46 N.C. App. 298, 264 S.E. 2d 814 (1980).

[2] The defendant also contends the plaintiffs did not tender payment within the time specified by the contract. He argues that the 1968 agreement provides that payment shall be made within 10 days after receipt of the life insurance proceeds and the 1973 agreement provides payment from the insurance proceeds shall be made within 30 days after the qualification of the personal representative of the estate. The defendant contends the failure of the plaintiffs to tender within either of these times is a material breach by the plaintiffs of the contract. We believe the contract shows that a failure to tender within either of these times is not a material breach. It provides that "in any event the purchase price must be paid within a period of six months after the death of the Stockholder." We believe this language contemplates that there may be reasons why the tender cannot be made within the shorter periods. In this case not all the insurance pro-

ceeds had been collected and the ownership of all the stock had not been determined within these periods. The tender was made within six months of the death of the decedent which is the outside limit provided in the contract.

[3] The defendant argues further that specific performance is not appropriate because the plaintiffs engaged in inconsistent conduct. He says this is so because the plaintiffs asserted ownership to a part of the stock in a separate action. We do not believe this bars the plaintiffs from bringing this action. It is not inconsistent to determine first the ownership of the stock before tendering the consideration for it. The defendant argues that if the plaintiffs had been held to own this part of the stock, they could have then disregarded the stock purchase agreement. This is not correct. The agreement is binding on all parties to it, and if the defendant had so chosen, he could have enforced it.

The defendant also contends the plaintiffs were guilty of laches, that the terms of the agreement are not specific, and there is not a mutuality of remedy. We believe the record shows the plaintiffs moved expeditiously to execute the contract. They are not guilty of laches. We also hold that the terms of the contract are specific and mutually enforceable on all parties.

In allowing the plaintiffs' motion for summary judgment, the court dismissed its claim for judgment against the estate for $445,067.00. This claim is based on what the plaintiffs contend is what should be a reduction in the book value of the stock. Since we have held that there must be a trial as to the book value of the stock, we reverse this portion of the judgment.

Affirmed in part; reversed in part, and remanded.

Judges CLARK and WHICHARD concur.