R. BRADFORD LEE, Plaintiff v. JOHN C. SCARBOROUGH and EB COMP, INC., a North Carolina Corporation (successor to E.B. Comp Services, Inc. and to E.B. Services, Inc., former North Carolina corporations), Defendants

No. COA02-1632-2

(Filed 18 May 2004)

1. Corporations— breach of stock option agreement— changed capitalization

In a superceding opinion (the prior opinion is at 162 N.C. App. 674, filed 17 February 2004), summary judgment was found to have been correctly granted against EB Comp, Inc. on a claim for breach of a stock option agreement. Defendant breached the agreement by approving a merger of the company, thereby changing its capitalization, without plaintiff's prior written consent.

2. Corporations— breach of stock option agreement—participation in merger—individual act

Defendant Scarborough breached a stock option and restriction agreement as an individual when he voluntarily participated in a merger he knew would extinguish plaintiff's stock options, and summary judgment was correctly granted for plaintiff. While the conversion of shares pursuant to a merger is essentially a corporate rather than a shareholder act, Scarborough was the sole

shareholder and director and the line between corporate actions and shareholder actions was virtually indistinguishable.

### 3. Contracts— recital of consideration—competency of contrary evidence

Evidence to the contrary was not competent to contradict the recital of consideration on the face of a stock option agreement.

### 4. Damages and Remedies— stock option agreement—evidence of readiness to exercise option

A new trial on damages was granted in a case involving a stock option agreement because the court should have admitted evidence that plaintiff could not have exercised the option due to an administrative regulation. This was relevant to whether plaintiff intended to exercise the option.

Appeal by defendants from order filed 1 June 2001 by Judge Marcus L. Johnson; order filed 28 January 2002 by Judge Timothy S. Kincaid; order filed 1 March 2002 by Judge Robert P. Johnston; order filed 18 March 2002 by Judge Clarence E. Horton, Jr.; and judgment dated 28 March 2002 and orders filed 25 April 2002 and 10 May 2002 by Judge C. Preston Cornelius in Mecklenburg County Superior Court. The appeal was heard in this Court on 10 September 2003, and the opinion was filed 17 February 2004.

On 23 March 2004, plaintiff filed a Petition for Rehearing. The petition was granted by order of this Court entered 4 May 2004, and the matter was heard on the petition to rehear without additional briefs or oral argument. We hereby withdraw the opinion filed 17 February 2004, superceding and replacing it with the following amended opinion.

*Helms Mulliss & Wicker, PLLC, by E. Osborne Ayscue, Jr. and John H. Cobb, for plaintiff-appellee.*

*Bishop, Capitano & Abner, P.A., by J. Daniel Bishop and Joseph W. Moss, Jr., for defendants-appellants.*

MARTIN, Chief Judge.

Plaintiff-appellee, R. Bradford Lee ("Lee") brought this action against defendants-appellants, John C. Scarborough ("Scarborough") and E.B. Comp., Inc. alleging defendants' breach of a stock option and restriction agreement. Briefly summarized, the record discloses

the following facts relevant to the issues raised on appeal: Both Lee and Scarborough worked in the insurance industry. Lee owned a consulting business and Scarborough was the majority owner and director of E.B. Services, Inc. ("Services"), a group health benefit plan management business. In mid-1992, Lee helped Scarborough form a company known as E.B. Comp Services, Inc. ("Comp Services"). Comp Services engaged in business as a third-party administrator ("TPA") of workers compensation insurance plans. Scarborough was the sole shareholder and sole director of Comp Services. Around the time of Comp Services' formation, Scarborough signed individually and as president of Comp Services, a Stock Option and Restriction Agreement ("Agreement") dated 16 July 1992. The Agreement, effective for five years, included the following terms:

2. Stock to be Purchased

(a) [Plaintiff] shall have an option to purchase from Stockholder that number of shares of stock equal to 50% of all the issued and outstanding shares of Company, it being the intent of the parties that should [plaintiff] fully exercise this option, [plaintiff] will have a fifty percent (50%) ownership in Company. . . .

. . . .

5. Restriction on Stockholder's Transfer of Shares. Stockholder shall not assign, encumber or dispose of any portion of his stock interest in the Company, by sale or otherwise, except upon compliance with the terms and conditions of this Agreement. . . .

6. Sale of Additional Shares by Company. Company agrees not to issue any stock, by sale or otherwise, without first obtaining [plaintiff's] written approval and without first offering such shares to [plaintiff] . . . . There shall be no split, reclassification or other change in the capitalization of Company without the prior written consent of [plaintiff].

Effective 1 January 1995, without notice to Lee, Comp Services merged into Services, which is now defendant E.B.Comp., Inc. ("Comp"). Lee filed this action alleging breach of the Agreement. Defendants answered, denying the material allegations of breach and asserting affirmative defenses. Following discovery, plaintiff and defendants moved for summary judgment; Lee was granted summary judgment on the issue of breach. The issue of damages was tried to a jury, which returned a verdict awarding Lee damages in the amount of $565,901.01. The trial court entered judgment upon the verdict and

awarded prejudgment interest in the amount of $327,695.45. Defendants appeal.

I.

In their first two arguments, defendants contend the trial court erred when it granted partial summary judgment in favor of plaintiff against defendant Comp and against defendant Scarborough, individually, on the issue of breach. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). The issue of contract interpretation is a question of law. *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 534 S.E.2d 653 (2000). While both option contracts and restrictions on the alienation of property interests are strictly construed, the clear intent of the parties as expressed on the face of the contract controls. *See Lagies v. Myers*, 142 N.C. App. 239, 247-48, 542 S.E.2d 336, 341-42, *disc. review denied*, 353 N.C. 526, 549 S.E.2d 218 (2001); *Bryan-Barber Realty, Inc. v. Fryar*, 120 N.C. App. 178, 181-82, 461 S.E.2d 29, 31-32 (1995).

[1] We first address the issue of Comp's breach of the Agreement. The Agreement expressly restricted Comp Services from, *inter alia*, splitting, reclassifying, or making any other changes in the capitalization of the company without the prior written consent of plaintiff. While this restriction was still in effect, Comp Services approved the merger of itself into Services pursuant to §§ 55-11-01-11-10 of the North Carolina General Statutes.

Restrictions on the alienation or transfer of property are not favored and therefore, must be strictly construed. *See Duncan v. Duncan*, 147 N.C. App. 152, 156, 553 S.E.2d 925, 928 (2001), *disc. review denied*, 355 N.C. 211, 559 S.E.2d 800 (2002). Whether a company's approval of a merger pursuant to §§ 55-11-01-11-10 is clearly prohibited by a restriction in an agreement prohibiting a change in the capitalization of a company is an issue of first impression in North Carolina.

Capitalization is defined by Black's Law Dictionary as "[t]he total amount of long-term financing used by a business, including stocks, bonds, retained earnings, and other funds." Black's Law Dictionary 202 (7th ed. 1999). When a merger takes effect, the merging corporation ceases to exist; all assets and liabilities of the

merging corporation are vested in the surviving corporation, and the shares of the merging corporation are thereupon converted into "shares, obligations, or other securities of the surviving . . . corporation or into the right to receive cash or other property . . . ." N.C. Gen. Stat. § 55-11-06 (a)(1), (2), (6) (2003).

Consolidation of two companies' assets, liabilities, and stocks pursuant to a merger necessarily involves a change in the amount and character of "stocks, bonds, retained earnings, and other funds," Black's Law Dictionary 202 (7th ed. 1999), possessed by the businesses participating in the merger. *Cf.* N.C. Gen. Stat. § 55-14A-01(a)(5) (2003) (financial reorganization of a company pursuant to bankruptcy or insolvency may include participating in a merger). We hold, therefore, that merger pursuant to §§ 55-11-01-11-10 clearly effects a change in the capitalization of a company and thus, Comp Services breached its obligation in the Agreement not to change the capitalization of the company by approving a merger of the company without the prior written consent of plaintiff.

[2] Moreover, Scarborough, individually, also breached the stock option and restriction agreement by voluntarily participating in a merger he knew would extinguish the plaintiff's stock options under the agreement. Principles of contract law are generally applied to the interpretation of options. *Lagies v. Myers*, 142 N.C. App. 239, 247, 542 S.E.2d 336, 341 (2001). "[B]ecause the other party is not bound to perform, and is under no obligation to buy," options are construed strictly in favor of the maker. *Id.* at 248, 542 S.E.2d at 342. However, "[i]f the option terms are clear and unambiguous, 'it must be enforced as it is written, and the court may not disregard the plainly expressed meaning of its language.' " *Id.* at 247, 542 S.E.2d at 342. (citation omitted).

In this case, Scarborough, as the sole shareholder of Comp Services, had a contractual obligation to plaintiff to hold open an option to purchase shares of Comp Services for a period of five years. It is undisputed that before the five year period expired, Scarborough, in his capacity as the sole shareholder and the sole director of Comp Services, decided to merge the company into Services, of which he was a 90% owner. *See* N.C. Gen. Stat. § 55-11-01(a) (2003) ("One or more corporations may merge into another corporation if the board of directors of each corporation adopts and its shareholders . . . approve a plan of merger."). When a merger takes place, the merging company, as well as its shares, cease

to exist. N.C. Gen. Stat. § 55-11-06(a)(1), (6) (2003). Thus, there is no question that the merger extinguished the plaintiff's option to buy shares of Comp Services. A breach of the agreement by Comp Services imposes liability therefor upon the surviving corporation, defendant Comp. N.C. Gen. Stat. § 55-11-06(a)(3) ("[s]urviving corporation has all liabilities of each corporation party to the merger.").

Nevertheless, defendant Scarborough argues that even though the merger extinguished plaintiff's options, he was not liable for breach of contract since a merger is essentially a corporate act, not a shareholder act. It is true that conversion of shares pursuant to a merger is initiated by corporate act and accomplished by operation of law, and not through any transfer or conveyance by a shareholder. *See* N.C. Gen. Stat. §§ 55-11-01, 55-11-06 (2003). The official comment to N.C. Gen. Stat. § 55-11-06 (2003), listing the effects of merger, states:

> ***A merger is not a conveyance or transfer***, and does not give rise to claims of reverter or impairment of title based on a prohibited conveyance or transfer. (emphasis added).

Based on this principle, other jurisdictions have found that restriction agreements which prohibit the voluntary transfer of shares by a shareholder are not violated when parties to the agreement vote their shares in favor of a merger. *See Seven Springs Farm, Inc. v. Croker*, 801 A.2d 1212, 1216 (Pa. 2002); *Shields v. Shields*, 498 A.2d 161, 167 (Del. Ch. 1985); *But see Bruns v. Rennebohm Drug Stores, Inc.*, 442 N.W.2d 591, 595 (Wis. Ct. App. 1989) (holding that substance must control over form when interpreting stock restriction agreements).

However, this case is distinguishable on several grounds. First, this case involves a contractual promise by Scarborough to hold open an option to purchase his shares in the company for a specified period of time. In contrast, the cases in the other jurisdictions merely involved restrictions on a shareholder's ability to transfer or convey his or her shares without prior approval. Second, the corporate act of merger in this case could not have been accomplished without the solitary actions of shareholder and director Scarborough. As both the sole shareholder and sole director of Comp Services, Scarborough was the only person who could vote for and approve the merger. In contrast, in order to effectuate the mergers in the other cases, more than one person was required to vote for and approve the transaction. *See Seven Springs Farm*, 801 A.2d 1212; *and Shields*, 498 A.2d 161. Thus, the line between a corporate act and a shareholder act is virtually indistinguishable in this case.

The clear intent of the parties as expressed on the face of the Agreement in this case was to prevent the intentional extinguishment by Scarborough or Comp Services of plaintiff's option to purchase shares. This intent is evidenced in an affidavit submitted by Scarborough, stating that he merged Comp Services into Services "[i]n order to deal with the problem of [plaintiff's] perverse incentives under the existing arrangement and to provide flexibility to award [another party] part ownership of E.B. Comp Services . . . ." Given the fact that only Scarborough, and no other parties, had the power to enter into the merger, and the fact that we are bound to effectuate the clear intent and purpose of binding contractual agreements, we find that Comp Services breached its obligation under the Agreement to plaintiff not to change the capitalization of the company when it approved a merger of itself into Services and that Scarborough breached his obligation to plaintiff under the Agreement to hold open shares of Comp Services for a period of five years when he voted for and approved the merger of the company. Thus, we affirm the trial court's grant of partial summary judgment in plaintiff's favor on the issue of both defendants' breach of the stock option and restriction agreement.

II.

[3] Defendants next argue the trial court erred in granting summary judgment in plaintiff's favor because the Agreement was not supported by consideration. The Agreement states the following:

3. Stockholder acknowledges that Lee, in the course of formation of the Company, has provided Stockholder with invaluable assistance with regard to forming the Company and employing key personnel. Without this assistance, Stockholder acknowledges that the Company would not have been formed; Stockholder also acknowledges that such assistance is the consideration for Stockholder granting to Lee the option and right of first refusal contained herein. Stockholder further acknowledges that such assistance is adequate consideration for the restrictions on general operations of the Company contained herein.

. . . .

NOW, THEREFORE, for and in consideration of the premises and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged . . . .

Defendants presented evidence that plaintiff had previously been compensated $30,000 for his assistance in "establishing a company to handle Worker's Compensation claims as a TPA . . . ." Thus, they argue that the recital in the contract was insufficient to constitute adequate consideration since plaintiff had already performed and been compensated for these services. *See Penley v. Penley*, 314 N.C. 1, 18-19, 332 S.E.2d 51, 61-62 (1985) (absent certain circumstances, past services do not constitute adequate consideration for a new contract).

However, it is well established that parol evidence is not competent to contradict the terms of a subsequently entered into contract. *Thompson v. First Citizens Bank & Trust Co.*, 151 N.C. App. 704, 708-09, 567 S.E.2d 184, 188 (2002). The recital on the face of the Agreement in this case specifically recites that the contract is supported by adequate consideration. Thus, evidence to the contrary was not competent to contradict this recital with regard to the validity of the contract. *See id.* at 709-10, 567 S.E.2d at 188-89; *Weiss v. Woody*, 80 N.C. App. 86, 92, 341 S.E.2d 103, 107 (1986) ("Although it is always competent to contradict the recital in the deed as to the amount paid . . . it is not competent to contradict the acknowledgment of a consideration paid in order to affect the validity of the deed . . . ."). Defendants' assignment of error is overruled.

III.

[4] Defendants assign error to the exclusion of evidence, during the trial on the issue of damages, regarding whether plaintiff was ready, willing, and able to exercise the option at some time during the period specified in the option contract and to the trial court's refusal to submit to the jury the issue of plaintiff's willingness and ability to exercise the option. We agree.

"An option is not a contract to sell, but it is transformed into one upon acceptance by the optionee in accordance with its terms." *Kidd v. Early*, 289 N.C. 343, 352, 222 S.E.2d 392, 399 (1976). Thus, in order to be entitled to more than nominal damages from the wrongful breach of an option contract, the optionee must show that he was ready, willing, and able to exercise the option at some time during the period specified in the option contract. *See id.* at 364, 222 S.E.2d at 407.

During the trial on the issue of damages, defendants attempted to present evidence showing that plaintiff could not have exercised

**LEE v. SCARBOROUGH**

[164 N.C. App. 357 (2004)]

the option, due to a state administrative regulation, while he was still employed as a trustee for NCME, a workers' compensation insurer. The tendered evidence would have shown that while plaintiff was not compensated for his services prior to defendant's breach, plaintiff was paid approximately $75,000 for his services as trustee for NCME in 1995 and would have had to resign his position and forego these benefits had he chosen to exercise the option. Since plaintiff had not attempted to exercise the option prior to or at the time of defendant's breach, such evidence is relevant to the issue of whether plaintiff ever intended to exercise the option had it been available to him at some time during the period specified in the option contract and should have been submitted to the jury in order to properly determine the issue of damages. *See* N.C. Gen. Stat. § 8C-1, Rules 401, 402. Moreover, the admission of such evidence would have required the trial court to submit to the jury the issue of whether plaintiff was ready, willing, and able to exercise the option. *In re Estate of Ferguson*, 135 N.C. App. 102, 105, 518 S.E.2d 796, 798 (1999) (where substantial evidence exists in support of an issue, the trial court is required to submit the issue to the jury, upon request). If the jury should determine from such evidence that plaintiff was not ready, willing, and able to exercise his rights under the option, he would be entitled to no more than nominal damages for its breach. *Hocutt v. Western Union Telegraph Co.*, 147 N.C. 186, 60 S.E. 980 (1908). The exclusion of such evidence and the resulting failure of the trial court to submit the issue arising therefrom entitle defendant to a new trial on the issue of damages.

In light of our award of a new trial on the issue of damages, we need not address the remaining assignments of error brought forward in defendants' brief relating to the trial and judgment as they may not recur at retrial. In addition, those assignments of error not brought forward in defendants' brief are deemed abandoned. N.C. R. App. P. 28(a).

Affirmed in part, reversed and remanded for a new trial on the issue of damages.

Judges BRYANT and GEER concur.