Hilco Transp., Inc. v. Atkins, 2015 NCBC 44.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 8677

HILCO TRANSPORT, INC., )
)
Plaintiff, )
)
v. )
)
NATALIE L. ATKINS; MICHAEL )
ALLAN BREWER, as Custodian for )
Patterson Riley Brewer under the )
North Carolina Uniform Transfers to )
Minors Act; and MICHAEL ALLAN )
BREWER, as Custodian for Nicholas )
Alan Brewer under the North Carolina )
Uniform Transfers to Minors Act, )
)
Defendants and )
Third-Party Plaintiffs, )
)
v. )
)
JOHN GURNEY LONG; )
JONATHAN DREW LONG; )
RICHARD WOHLFORD; )
LONG INVESTMENT PROPERTIES, )
LLC; CAROLINA TRANSPORT OF )
GREENSBORO, INC.; and ASHLEY )
LONG MICHAELS, )
)
Third-Party Defendants. )
)

ORDER

{1}     THIS MATTER is before the Court on Defendants' Motion to Dismiss ("Motion"), made pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").  The Motion seeks to foreclose Plaintiff's right to demand specific performance for the sale of Defendants' shares.  For the reasons stated below, the Motion is DENIED.

*Carruthers & Roth, P.A. by J. Patrick Haywood and Mark K. York for Plaintiff.*

*Law Offices of Charles Winfree by Charles H. Winfree, Joseph B. Bass III, and Ryan Q. Gladden for Defendants.*

Gale, Chief Judge.

## I.  STANDARD OF REVIEW

{2}     On a motion to dismiss pursuant to Rule 12(b)(6), the Court inquires "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)).  The Court may grant a motion to dismiss under Rule 12(b)(6) where one of the following is true: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.  *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

{3}     In considering a Rule 12(b)(6) motion, the Court accepts the factual allegations of the Complaint as true without assuming the veracity of Plaintiff's legal conclusions.  *See Walker v. Sloan*, 137 N.C. App. 387, 392, 592 S.E.2d 236, 241 (2000).

## II.  PROCEDURAL HISTORY

{4}     Plaintiff initiated this action on August 29, 2014, seeking specific performance of a stockholder agreement.  The case was designated a complex business matter on September 5, 2014, and assigned to the undersigned on September 9, 2014.

{5}     On November 3, 2014, Defendants filed the present Motion, seeking to dismiss the breach of contract claim and challenging Plaintiffs' right to specific

performance. The Court heard argument on January 6, 2015. The Motion is ripe for disposition.

## III. FACTUAL BACKGROUND

{6} Plaintiff Hilco Transport, Inc. ("Hilco") is a closely held North Carolina corporation that provides transportation services for waste, petroleum, propane, asphalt, dump, and aggregate hauling. William H. Long ("Doc Long") and his daughter, Patty Long Hill ("Patty Hill") founded Hilco in 1987.

{7} Shortly after Hilco's incorporation, Doc Long's sons, Charles Long and Third-Party Defendant John Gurney Long ("Gurney Long") (collectively, "the Long Brothers"), began managing Hilco's operations.

{8} On January 17, 2005, a Stockholder Buy-Sell Agreement ("Stockholder Agreement") was executed. The signatories were Hilco and seven of the ten existing stockholders.[1] The stockholder signatories were the Long Brothers; Third-Party Defendants Jonathan Drew Long and Ashley Long Michaels, who are Gurney Long's children; and Wendi L. Brewer, Natalie L. Atkins ("Atkins"), and Tyra L. Nall ("Nall"), who are Charles Long's daughters. Defendant Michael Allen Brewer ("M.A. Brewer"), subsequently agreed to be bound by the Stockholder Agreement after taking Wendi Brewer's shares as custodian for their children, Patterson Riley Brewer and Nicholas Alan Brewer, under the North Carolina Uniform Transfers to Minors Act.

{9} The Stockholder Agreement recites that it was intended to ensure that, "upon the death of one of the Long Brothers, the Long Brother who survives will have the right, but not the obligation, to acquire some or all of the Shares of the deceased Long Brother and his family and thereby obtain voting control over the Corporation." (Compl. Ex. A ("Stockholder Agreement").) The Complaint asserts that the Stockholder Agreement's further unstated purpose was "to ensure that the

---

[1] A subsequent motion challenges whether Hilco effectively adopted the agreement at the time of execution, because it was not signed in accordance with the company's bylaws. This Order does not address that issue.

deceased Long Brother's family members would be fairly compensated for their Shares and that the surviving Long Brother would be able to continue running Hilco in a congenial manner." (Compl. ¶ 25.)

{10}  More specifically, the Stockholder Agreement provides,

> Notwithstanding anything contained in this Agreement to the contrary . . . upon the death of one of the Long Brothers, the surviving Long Brother shall have (i) the right to acquire the Shares of the Deceased Long Brother pursuant to Article IV and thereby obtain voting control over the Corporation, (ii) the ability (upon acquisition of voting control) to elect a controlling majority of the Board of Directors of the Corporation, and (iii) the ability to require one or more of the family members of the Deceased Long Brother to sell their Shares to the Corporation.

(Stockholder Agreement § 5.1.) The Stockholder Agreement states that any shares sold pursuant to Section 5.1 are to be sold at fair market value measured at the end of the month preceding the exercise of the option. Under the agreement, R. Wayne Hutchins, CPA ("CPA Hutchins") is to determine the value of the shares to be sold. (Stockholder Agreement § 6.1.)[2]

{11}  In addition to Section 5.1, a separate section of the Stockholder Agreement gives each signatory a right to specific performance:

> Each Stockholder agrees that each and every provision of this Agreement is reasonably necessary for the protection of the rights and interest of each Stockholder and his or her successors or assigns and that monetary damages may not be an adequate remedy for a breach of this Agreement.  The Stockholders and their successors and assigns shall therefore be entitled to specific performance and injunctive relief to enforce the provisions of this Agreement.

(Stockholder Agreement § 10.1.)

{12}  No provision of the Stockholder Agreement expressly provides a right of specific performance directly to Hilco.  However, a surviving Long Brother can require corporate redemption of shares.

---

[2] A subsequent motion challenges whether CPA Hutchins's valuation is binding as to the shares at issue.  This Order does not address this issue.

{13}     On June 30, 2005, Charles Long passed away unexpectedly.  On October 17, 2005, Gurney Long purchased Charles Long's shares from the Estate of Charles L. Long, based on a valuation by CPA Hutchins.  Gurney Long has since remained active in Hilco's operations.  In or around the fall of 2010, Nall redeemed her 223 shares.  In or around 2013, Wendi Brewer initiated a discussion concerning Hilco's possible redemption of Defendants' shares, but no agreement was reached.

{14}     On April 25, 2014, Gurney Long issued a Notice of Special Meeting of the Board of Directors of Hilco Transport, Inc. for the purpose of considering a motion to redeem Defendants' shares pursuant to the Stockholder Agreement.  On April 28, 2014, Atkins purported to gift her shares to Doc Long.[3]

{15}     The special meeting was held on May 9, 2014.  During the meeting, the Board (1) ratified the Stockholder Agreement on behalf of Hilco; (2) declared void and ineffective Atkins attempted transfer to Doc Long; and (3) authorized Hilco to exercise its option under the Stockholder Agreement to redeem Defendants' shares.  (Compl. ¶¶ 86–90.)  Hilco subsequently issued written notice to Atkins and M.A. Brewer that it was exercising its option to purchase their shares.

{16}     Hilco engaged CPA Hutchins to value Atkin's and M.A. Brewer's shares.  The closing for the redemption of their shares was scheduled for August 15, 2014.  Defendants refused to allow Hilco to redeem their shares, giving rise to the present dispute.  Among other issues, Defendants challenge whether CPA Hutchins prepared a proper valuation consistent with the Stockholder Agreement.[4]

{17}     The present Motion is limited to the issue of whether the terms of the Stockholder Agreement preclude Hilco's right to seek specific performance.

---

[3] If it applies, Section 1.1 of the Stockholder Agreement restricts such a transfer.  By a subsequent motion which this Order does not address, Atkins contends that she made her gift prior to Hilco's ratification of the Stockholder Agreement, so that her transfer was not governed by the Stockholder Agreement.

[4] A subsequent motion raises the issue of what burden Defendants must meet to challenge CPA Hutchins's valuation.  This Order does not address that issue.

# IV.  ANALYSIS

{18}    The Court is called upon to interpret the terms of the Stockholder Agreement and to reconcile potential conflicts of language among its various provisions.  Where a contract is sufficiently specific and mutually enforceable, a court will permit specific performance of its terms.  *See Lacy J. Miller Mach. Co. v. Miller*, 58 N.C. App. 300, 306, 293 S.E.2d 622, 626 (1982).  Assuming the Stockholder Agreement is enforceable,[5] no party challenges either that the individual stockholders have the right to specific performance or that Gurney Long has the right to cause Hilco to redeem the shares.  Rather, the Motion asserts that only the stockholders, but not Hilco itself, have a right to compel specific performance.

{19}    There are special rules for interpreting stockholder agreements that limit share transfers, including that "restrictions on alienation or transfer of stock are not favored and consequently are strictly construed."  *Avrett & Ledbetter Roofing & Heating Co. v. Phillips*, 85 N.C. App. 248, 251, 354 S.E.2d 321, 323 (1987).  However, such agreements can be upheld where the language is clear, because "[w]hile both option contracts and restrictions on the alienation of property interests are strictly construed, the clear intent of the parties as expressed on the face of the contract controls."  *Lee v. Scarborough*, 164 N.C. App. 357, 360, 595 S.E.2d 729, 732 (2004).

{20}    The parties' intent is to be gleaned from the language used within the four corners of the contract.  *Stovall v. Stovall*, 205 N.C. App. 405, 410, 698 S.E.2d 680, 684 (2010) (quoting *Lynn v. Lynn*, 202 N.C. App. 423, 431, 689 S.E.2d 198, 204–05 (2010)).  The contract is to "be construed as a whole, considering each clause and word with reference to all other provisions and giving effect to each whenever possible."  *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 504, 320 S.E.2d 892, 897 (1984).

---

[5] Again, a subsequent motion, not addressed in this Order, challenges the validity and enforceability of the Stockholder Agreement.

{21} Defendants contend that the parties to the Stockholder Agreement clearly intended that Hilco would not be entitled to specific performance. Defendants argue that because the Stockholder Agreement expressly gives such a right to the stockholders but not to Hilco, it necessarily follows that Hilco has no such right. Defendants cite *Lee v. Scarborough* to support their argument that, unless expressly granted, no right to specific performance of a contract exists. The *Lee* court implied that corporate conduct must be clearly prohibited by a restrictive agreement in order for it to be actionable. *Lee*, 164 N.C. App. at 360, 595 S.E.2d at 732 (noting the relevant inquiry was whether a restriction on change in capitalization of a company "clearly prohibited" approval of a merger). *Lee* does not, however, speak to whether an option contract that operates as a restriction on alienation must expressly authorize specific performance. Other North Carolina Court of Appeals opinions have specifically enforced such agreements without mentioning whether the underlying agreements expressly authorized specific performance. *See generally Crowder Constr. Co. v. Kiser*, 134 N.C. App. 190, 517 S.E.2d 178 (1999); *Lacy J. Miller Mach.*, 58 N.C. App. at 306, 293 S.E.2d at 626 (1982).

{22} Defendants also contend that the doctrine of *expressio unius est exclusion alterius*, meaning that the expression of one thing is the exclusion of another, dictates that Hilco's right to specific performance should not be inferred from the Stockholder Agreement. *See Evans v. Diaz*, 333 N.C. 774, 779–80, 430 S.E.2d 244, 247 (1993). The doctrine does not resolve the issue of contract interpretation in this case. Defendants' argument is based on an assumption that Section 10.1 is the only section that governs Hilco's right to specific performance. Plaintiff counters that Section 5.1 of the Stockholder Agreement is also relevant to discerning the parties' intent. The Court agrees.

{23} Section 5.1 begins with the phrase, "[n]otwithstanding anything contained in this Agreement to the contrary," and then provides that the surviving Long Brother can require family members of the deceased brother to sell their shares to the Corporation. (Stockholder Agreement § 5.1.) Plaintiff contends that

this language makes clear that Hilco is ultimately entitled to purchase the shares of the deceased brother's immediate family members. Plaintiff asserts that Hilco is entitled to a specific performance remedy in its own name to accomplish the purpose of the Stockholder Agreement, particularly where the surviving Long Brother directs the corporate action as he is entitled to do. *See Crowder Constr.*, 134 N.C. App. at 211, 517 S.E.2d at 192 (specifically enforcing a stock restriction and buy-out agreement against a shareholder because such contracts "are designed to ensure that ownership of all of the stock, especially of a close corporation, stays within the control of . . . those who will continue to contribute to its successes or failures" (quoting *Gallagher v. Lambert*, 549 N.E.2d 136, 137 (N.Y. 1989))).

{24}    The Complaint alleges that Hilco was authorized under Gurney Long's motion to redeem the shares in question. Under Section 5.1, if Gurney Long was entitled to cause Hilco to call shares, this defeats a negative implication that Hilco was to be barred from specific performance.

{25}    Defendants' argument essentially is that Gurney Long cannot compel or authorize Hilco to take the necessary action to redeem the shares, and that only Gurney Long individually can take such actions. The Court finds the argument inconsistent with Section 5.1. Moreover, according to the Stockholder Agreement, to the extent Section 5.1 and Section 10.1 conflict, Section 5.1 controls.

{26}    In sum, the Court concludes that it should not construe Section 10.1 as an express limitation on Hilco's right to specific performance to compel redemption when acting pursuant to Section 5.1 of the Stockholder Agreement.

{27}    In denying the present Motion to Dismiss, the Court has not determined that Hilco is actually entitled to specific performance. There are many issues yet to be resolved in that regard. The Court's determination is limited to the conclusion that the Stockholder Agreement does not expressly limit Hilco's right to specific performance, and that Hilco may properly seek that remedy.

## V. CONCLUSION

{28}  For the foregoing reasons, Defendants' Motion to Dismiss is DENIED.

IT IS SO ORDERED, this the 5th day of May, 2015.

/s/ James L. Gale
_____

James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases